## Wilson, Appellant, *v.* King of Prussia Enterprises, Inc.

Argued January 14, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Daniel L. Quinlan, Jr.*, with him *Paul C. Vangrossi*, for appellant.

*Marvin Katz*, with him *Specter & Katz*, for appellees.

OPINION BY MR. JUSTICE EAGEN, June 24, 1966:

In this equity action, the plaintiff sought specific performance of a written contract to reconvey land. After hearing, the chancellor entered an adjudication and decree nisi, dismissing the action solely on the

ground of laches. The court en banc subsequently made the decree final. The plaintiff appeals.

The facts necessary to our decision, which are supported by the evidence and found by the chancellor to be true, may be summarized as follows:

In 1958, the plaintiff, William H. Wilson (Wilson) and his father acquired title to approximately 35 acres of land in Upper Merion Township, Montgomery County. On August 2, 1960, plaintiff and the executors of his father's estate entered into a conditional written agreement of sale for the land to the defendant corporation, King of Prussia Enterprises, Inc.[1] In the same agreement and in part consideration thereof, the defendant corporation agreed to reconvey a small portion of the land (.885 acres) to the plaintiff on or before June 30, 1962, for $8000.

In this connection the contract had two pertinent and significant provisions: (1) "Settlement shall be made on or before June 30, 1962, said time to be the essence of this agreement, unless extended by mutual consent in writing endorsed hereon." (2) "Tender of an executed deed and purchase money are hereby waived."

After gaining title to the land in 1961, the corporate defendant applied for and obtained a re-zoning of the tract. This re-zoning made it impossible, under township ordinances to subdivide or reconvey a part thereof to Wilson without first having the subdivision plan approved by the board of township supervisors. In order to make performance of the agreement to reconvey the .885 acres legally possible, Wilson on May 9, 1962, submitted an application and plan of subdivision to the township authorities. On June 27, 1962, the papers were returned to Wilson with instructions to have them submitted by the then record owner of the

---

[1] The agreement was consummated in June 1961.

land or its authorized agent, because this was required by township regulations.

Wilson promptly contacted the president of the corporate defendant, Martin W. Field, and apprised him of the pertinent regulations and requested that the corporate defendant make the necessary application for subdivision of the land. Also, during the months of June and July 1962, Wilson had several telephone and face-to-face conversations with Field concerning the matter and requested an extension of the date of settlement specified in the agreement. Field was vague in his responses.

No extension of time was ever granted, nor did the plaintiff ever tender the money agreed to be paid for the reconveyance. Neither did the corporate defendant ever file or attempt to file the necessary subdivision plan with the township authorities to place it in position to reconvey to Wilson. From July 1962 to June 1963, there was an absence of communication between Wilson and Field or the corporate defendant. However, on June 19, 1963, Wilson, through his attorney, wrote to Field, as president of the corporate defendant, again requesting that the necessary subdivision plan be filed with the township authorities, and requesting that a new settlement date be fixed since, as of then, the corporate defendant was not yet in a legal position to reconvey as agreed. On June 27, 1963, an attorney for the corporate defendant replied that the agreement had lapsed as of June 30, 1962, and was no longer binding. On August 21, 1963, Wilson's attorney again wrote the corporate defendant asking that a new date for settlement be fixed. On August 23, 1963, the corporate defendant's counsel acknowledged receipt of this letter and replied that the agreement had lapsed and his client was unwilling to create any new rights in Wilson.

This action was instituted on June 9, 1964.

We agree with the lower court's conclusion that because of laches the plaintiff is not entitled to the requested relief of specific performance. However, we disagree with its decree *dismissing* the action. Under the proof, Wilson may well be entitled to damages for breach of contract on the law side of the court.

In considering the question of laches in this case, it is important to keep in mind two relevant time periods: (1) That period from June 30, 1962, (the date specified in the agreement for consummation) to June 27, 1963, (the date when Wilson was *first* notified that the corporate defendant did not intend to comply); (2) That period from June 27, 1963, to June 9, 1964, when this action was finally filed. It is difficult for us to see how Wilson can be properly charged with laches during the first period, particularly in view of the fact that the defendant corporation could not legally comply with the contract, and did not indicate any intention not to do so until June 27, 1963. Be that as it may, other considerations militate against Wilson during the second period.

Wilson definitely knew on June 27, 1963, that, to protect his right of specific performance, litigation was necessary. He failed to act until one year (less eighteen days) later. In the meantime, the corporate defendant executed a note on September 25, 1963, with a mortgage company in the sum of $350,000, which was filed of record and became a lien on the entire 35 acres. Therefore, due to Wilson's delay, innocent third parties acquired rights in the property, and to now sustain Wilson's claim for specific performance would seriously affect these rights. It is impossible to restore the status quo. This, in itself, is sufficient to defeat plaintiff's claim for specific performance. Compare, *Neely's Appeal*, 85 Pa. 387 (1877), and *Felin v. Futcher*, 51 Pa. Superior Ct. 233 (1912). See also *Henry v. United States*, 46 F. 2d 640 (3d Cir. 1931).

The application of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice. See, *Brodt v. Brown*, 404 Pa. 391, 172 A. 2d 152 (1961), and *Lutherland, Inc. v. Dahlen*, 357 Pa. 143, 53 A. 2d 143 (1947). The question of laches is factual and to be determined by an examination of the circumstances: *Mulholland v. Pitts. Nat. Bank*, 418 Pa. 96, 209 A. 2d 857 (1965). Under the circumstances presented, we find no abuse of discretion in the lower court's action denying specific performance, but we are not now persuaded that the record facts justified complete termination of Wilson's cause of action. Even if the facts did not warrant equitable relief, but justified money damages, the complaint should not have been dismissed, but rather certified to the law side of the court. See, *Allegheny Plast. v. Stuyvesant Ins. Co.*, 414 Pa. 381, 200 A. 2d 775 (1964), and *Hampsey v. Duerr*, 401 Pa. 578, 166 A. 2d 38 (1960). We feel that the question of Wilson's rights for breach of contract needs further exploration in the court below before conclusion of the controversy.

The fact that Wilson did not tender the agreed purchase price on the date specified in the agreement for settlement does not, in itself, preclude a claim at law for breach, because the contract, as noted before, specifically waived tender of the purchase price. See, Goldberg, Sales of Real Estate in Pennsylvania, 200 (1958). Further, even though the agreement made time "of the essence", this provision could be, and may have been, waived by the conduct of the parties. See, *Paralka v. Grummel*, 282 Pa. 235, 127 A. 619 (1925); *Warner Company v. MacMullen*, 381 Pa. 22, 112 A. 2d

74 (1955); and, *Cohn v. Weiss,* 356 Pa. 78, 51 A. 2d 740 (1947).

Decree vacated and record remanded with directions to enter an order certifying the case to the law side of the court.

Each party to pay own costs.