Clearview Land Development Co., Inc., Appellant, *v.* Commonwealth of Pennsylvania and Redevelopment Authority of the City of Philadelphia, Appellees.

Commonwealth of Pennsylvania and Redevelopment Authority of the City of Philadelphia, Appellants, *v.* Clearview Land Development Co., Inc., Appellee.

Argued April 2, 1974, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Joseph P. Mylotte,* with him *Alvin S. Ackerman* and *Ackerman and Mylotte,* for Clearview Land Development Co., Inc.

*Douglas R. Blazey,* Assistant Attorney General, with him *Karin W. Carter,* Assistant Attorney General, for Commonwealth.

OPINION BY JUDGE CRUMLISH, JR., October 10, 1974:

Clearview Land Development Co., Inc. (Clearview), the owner and operator of a forty acre landfill or garbage and refuse disposal site in Darby, Pennsylvania, has appealed from a final order of the Court of Common Pleas of Delaware County, dated August 7, 1973, which ordered closure of Clearview's solid waste disposal operation by September 30, 1973. Clearview was further directed to undertake certain affirmative actions before and after the above closure date to abate

the public nuisance found to have been created by its operations and to comply with various environmental protection laws of the Commonwealth. Clearview's principal focus on appeal is whether a court of equity has authority to order these affirmative acts. The Department of Environmental Resources (Commonwealth) and the Redevelopment Authority of the City of Philadelphia (Redevelopment Authority), have filed a cross-appeal to this order contending that the court below erred in requiring Clearview to final grade portions of the site with six (6) inches of compacted earth when departmental regulations required a two (2) feet thick final cover.

The instant controversy was precipitated by the filing of a complaint in equity by the then Department of Health on October 7, 1969, to enjoin Clearview's continued operation of its garbage dump which was averred to be a public nuisance. The complaint consisted of four counts: (1) the open burning of solid wastes in violation of an Air Pollution Abatement Order issued under the Air Pollution Control Act;[1] (2) the discharge of liquid leachate into Cobbs and Darby Creeks which bordered the site in violation of Section 401 of The Clean Streams Law;[2] (3) the open "ponding" of garbage and waste and other operational violations of departmental rules and regulations;[3] and (4) violation of the Township of Darby Dumping Ordinance of 1966.[4] A fifth count was subsequently amended to the complaint alleging Clearview's failure to obtain a permit to operate its landfill as required by Section 7 of the Penn-

---

[1] Act of January 8, 1960, P. L. (1959) 2119, *as amended*, 35 P.S. §4001 et seq.

[2] Act of June 22, 1937, P. L. 1987, *as amended*, 35 P.S. §691.401.

[3] Chapter 4, Article 422 of the Rules and Regulations of the Commonwealth of Pennsylvania, Department of Health, 25 Pa. Code §75.1 et seq.

[4] Ord. No. 373 (1966).

sylvania Solid Waste Management Act.[5] In implementation of this last count, the Commonwealth filed an application for a preliminary injunction on May 1, 1970 to restrain Clearview's continued operation without a permit. This petition was denied by the court below on May 18, 1970.

After several months of discovery and further delays not explained on this record, Clearview filed preliminary objections to the amended complaint on December 1, 1970. These objections (laches, the failure of the Commonwealth to exhaust *its* statutory remedies, and a motion for more specific pleadings) were ultimately dismissed by the lower court on October 19, 1972. Nine days after Clearview filed the above preliminary objections, however, the Commonwealth filed a second application for a preliminary injunction, requesting in lieu of immediate closure, that the court order remedial site improvements and operational changes by Clearview to bring it in compliance with departmental regulations. The threat of injunctive relief apparently spurred Clearview into extensive settlement negotiations with the Commonwealth and Redevelopment Authority,[6] culminating in an interim consent order entered by the court on November 16, 1971 which incorporated much of the relief requested by the Commonwealth's injunction application. On January 30, 1973, the Commonwealth filed a praecipe to enter a default judgment under Pa. R. C. P. No. 1511(a) for Clearview's failure to file an answer within twenty days of the court's dismissal of its preliminary objections. Simultaneously therewith, the Commonwealth moved to hold Clearview

---

[5] Act of July 31, 1968, P. L. 788, *as amended*, 35 P.S. §6007.

[6] The Redevelopment Authority entered the negotiations to protect its interest in land adjacent to the site and to supply Clearview with some of the ground fill required by Clearview for anticipated site improvements. It was formally made a party-plaintiff to the equity proceedings on November 16, 1971.

in contempt for failure to comply with the interim consent order. Upon Clearview's motion to open the default judgment, the court conducted a consolidated hearing on both motions. The judgment was opened and Clearview permitted to file an answer, and on February 26, 1973, the court entered an order supplementing the interim consent order and further defining the obligations of the parties in bringing Clearview's operations in compliance with the law.

On July 24, 1973, the Redevelopment Authority, alleging a violation of the February 26, 1973 order, petitioned the court again to hold Clearview in contempt. After a hearing, the court issued a final order and closure plan, finding Clearview in violation of the Pennsylvania Solid Waste Management Act and the regulations promulgated thereunder. Clearview was directed to cease its solid waste deposition operation by September 30, 1973, and in the interim and after final closure to, *inter alia*, not increase the volume of other refuse accepted; to police access routes to the landfill; to continue a rodent and vector control program until authorized by the Commonwealth to discontinue the program; and to complete site improvements consistent with the closure plan, including the grading of the plateau area of the site with at least six inches of compacted earth cover approved by the Commonwealth.

Clearview's primary argument on appeal is that the court below, sitting in equity, exceeded its authority under the Pennsylvania Solid Waste Management Act (hereinafter sometimes referred to as "the Act" in ordering not only closure, but the affirmative acts summarized above before and after closure. A reading of Section 13 of the Act makes short shrift of this contention: "In addition to any other remedies provided in this Act, the secretary may institute a suit in equity in the name of the Commonwealth in the court of common pleas of the county where the violation or nuisance ex-

ists for an injunction to *restrain a violation of this act or the rules, regulations or standards adopted thereunder and to restrain the maintenance of a public nuisance.* (Emphasis supplied.) 35 P.S. §6013.

The court below found Clearview in violation of Section 7 of the Act, 35 P.S. §6007, for operating its landfill without a permit, and, as is apparent from the relief granted, subsections (2), (3) and (4) of Section 9 of the Act, 35 P.S. §§6009(2), (3), (4), relative to the storage and processing of solid waste in contravention of departmental regulations or so as to otherwise create a public nuisance. Would closure alone restrain Clearview's violation of the Act and restrain its maintenance of a public nuisance? The record here supports the lower court's conclusion that Clearview's violations were of a continuing nature, and that closure alone would not fully abate the public nuisance created by these violations. In this context, we find no abuse of the court's statutorily sanctioned equity powers in requiring Clearview to undertake affirmative duties beyond mere closure to alleviate these conditions. *See, e.g., Commonwealth v. Barnes & Tucker Co.,* 455 Pa. 392, 319 A. 2d 871 (1974); *Commonwealth ex rel. Chidsey v. Black,* 363 Pa. 231, 69 A. 2d 376 (1949).

Is the Commonwealth's enforcement action here barred by laches? We find this argument difficult to comprehend as the Commonwealth can hardly be charged with prejudicial delay when it amended its complaint four months after the effective date of the Pennsylvania Solid Waste Management Act. That Clearview commenced its present operations more than thirteen years ago under a permit issued by Darby Township certainly does not give it a prescriptive right to continue a condition which is subsequently declared by statute to constitute a public nuisance. *Commonwealth v. Barnes & Tucker Co., supra; Commonwealth ex rel. Shumaker v. New York & Pennsylvania Co., Inc.,* 367

Pa. 40, 79 A. 2d 439 (1951); *Freedman v. West Hazleton Borough,* 297 Pa. 58, 146 A. 564 (1929). "(T)here can be no prescriptive right to maintain an obstruction in the highway or to pollute a stream to the detriment of the public." *Pennsylvania R. R. v. Sagamore Coal Co.,* 281 Pa. 233, 249, 126 A. 386, 391 (1924). Moreover, where as here the Commonwealth is attempting to enforce duties or obligations under its police power, laches is not a defense. *Kelly v. Washington,* 302 U.S. 1, 58 S. Ct. 87, 82 L. Ed. 3 (1937); *Commonwealth ex rel. v. Philadelphia & Reading Coal & Iron Co.,* 50 Pa. D. & C. 411 (Phila. C.P. 1944).[7]

Clearview's final argument, as we understand it, is that the court below erred in ordering final closure before Clearview was granted an administrative hearing on its appeal from the Commonwealth's denial of a permit under Section 7(g) of the Pennsylvania Solid Waste Management Act, 35 P.S. §6007(g). This contention, which essentially attacks the lower court's jurisdiction in equity on the ground that the Commonwealth has failed to exhaust statutory remedies available to it, is clearly without merit. As this Court stated in *Department of Environmental Resources v. Leechburg Mining Co.,* 9 Pa. Commonwealth Ct. 297, 302, 305 A. 2d 764, 767 (1973): "[T]he existence of traditional administrative law procedures such as provided in these statutes and by the provisions of the Administrative Code of 1929 which are generally recognized as affording an adequate remedy at law, does not necessarily oust the equity jurisdiction of the court where, as here, such jurisdiction is conferred by explicit language of the

---

[7] Laches may be defense against the Commonwealth assertion of its police powers in the limited situation where agents of the Commonwealth have actively aided in and expressly approved of the continued operation a business later alleged to constitute a public nuisance. *See Commonwealth v. Folcroft Landfill Corporation,* 1 Pa. Commonwealth Ct. 356 (1971).

statute or necessarily inferred by reason of the explicit relief afforded by the statute." Such explicit equity jurisdiction is vested in the court below by Section 13 of the Act, 35 P.S. §6013, quoted above. We are not here confronted with the problem of an election of remedies, as we were in *Department of Environmental Resources v. Leechburg Mining Company, supra,* as the Commonwealth in the instant case has not chosen to proceed against Clearview by administrative action. Rather, it was Clearview who attempted to invoke administrative relief, and the onus was on it to exhaust that revenue.

Finally, we must dispose of the appeal of the Commonwealth relative to the following portion of the court's closure plan: "By October 30, 1973, the entire plateau area (Exhibit A) shall have been graded and covered with at least six (6) inches of compacted earth cover, or other approved cover by the Department, and fertilized and planted as provided in 3a above."

The Commonwealth cites paragraph 75.115 of the Department of Environmental Resources regulations (25 Pa. Code §75.115), adopted pursuant to Section 6(3) of the Pennsylvania Solid Waste Management Act, 35 P.S. §6006(3), which required a final cover of two feet, and argues that the court below erred in not mandating two feet of final cover rather than six inches. While we applaud the lower court in its herculean effort to bring the parties to this dispute to some agreement, and in its comprehensive final closure plan, we feel that the court did err in not requiring two feet rather than six inches of final cover for the landfill. An equity court, vested with jurisdiction over a particular matter by statute, cannot devise a remedy inconsistent with or in excess of the relief delineated by its enabling legislation. *Myers v. Newtown Township School District,* 396 Pa. 542, 153 A. 2d 494 (1959) ; *Armstrong School District v. Armstrong Education Association,* 5 Pa. Commonwealth Ct. 387, 291 A. 2d 125 (1972). We

think this rationale applies to duly enacted regulations of authorized administrative agencies. A chancellor traditionally enjoys broad equity powers in devising the most appropriate means of abating a public nuisance. It is not unlimited, however, and absent particular or unusual circumstances not evident in this record, extant regulations dealing with the same condition must be viewed as the minimum standard to which a chancellor may shape his decree. In the instant case, neither the authority of the Department of Environmental Resources to promulgate paragraph 75.115 nor the substantive validity of this regulation was attacked, and thus the court below erred in ordering a final cover of less than two feet.

### ORDER

AND Now, this 10th day of October, 1974, the Order of the Court of Common Pleas of Delaware County is affirmed in all matters except for that portion which requires a six inch rather than a two feet final cover. The record in this case is remanded for proceedings consistent with this opinion.