Christiane Tasche Ullo, Petitioner *v.* Commonwealth of Pennsylvania, State Board of Nurse Examiners, Respondent.

Argued November 3, 1978, before Judges MENCER, DISALLE and CRAIG, sitting as a panel of three.

*Robert Lincoln Potter,* with him *Paul D. Boas,* for petitioner.

*David F. DeWees,* Assistant Attorney General, with him *Louis B. Rubin,* Assistant Attorney General, and *Gerald Gornish,* Acting Attorney General, for respondent.

OPINION BY JUDGE DiSALLE, March 12, 1979:

This is a petition for review filed by Christiane Tasche Ullo (Petitioner) from the order of the State Board of Nurse Examiners (Board), dated August 16, 1977, suspending her license as a registered nurse for a period of one year.

Petitioner was employed as a staff nurse at Children's Hospital in Pittsburgh, Pennsylvania, from July, 1973, until March, 1975. On November 23, 1974, while assigned to the infant medical and surgical ward, she restarted an infiltrated intravenous infusion on an infant in violation of hospital policy. She was thereupon suspended from work for three days. Then, on March 28, 1975, she forged a physician's name to a patient's medication chart in order to obtain penicillin for a fellow worker. Shortly after this incident, Petitioner was discharged from her position at Children's Hospital. The Acting Director of Nursing at Children's Hospital thereafter informed the

Board of Petitioner's behavior. During the next several months, further correspondence between these parties concerning both of the abovementioned events occurred. In October of 1976, the Board renewed Petitioner's license as a registered nurse. She was at that time attached to the nursing staff of Kane Hospital. Subsequently, on February 14, 1977, the Board issued a Citation and Notice of Hearing against Petitioner, charging her with a violation of the provisions of The Professional Nursing Law[1] and ordering her to show cause why her license as a registered nurse should not be suspended or revoked. In her answer to this citation, Petitioner admitted all of the allegations, but asserted as an affirmative defense that the Board's delay in instituting the proceedings barred the action. Following a hearing on April 20, 1977, the Board issued its adjudication suspending Petitioner for a period of one year. Thereafter, the present petition for review was filed.

Petitioner argues before this Court, as she did before the Board, that the Board, by delaying for two years before instituting these proceedings, is powerless to suspend or revoke her license. While we in no way condone such administrative delays, we are compelled to conclude that the circumstances surrounding the delay in the instant case did not affect the Board's power to act.

In support of her contention, Petitioner argues in the alternative that the Board was foreclosed from acting as it did either by operation of the doctrine of laches or on the ground that her right to due process was violated. The reliance on laches is misplaced. Assuming that laches may be asserted as a defense in an administrative disciplinary action (*see State Board of Medical Education and Licensure v.*

---

[1] Act of May 22, 1951, P.L. 317, *as amended*, 63 P.S. §211 et seq.

*Schireson,* 360 Pa. 129, 61 A.2d 343 (1948); *compare Churchill Area School District Appeal,* 30 Pa. Commonwealth Ct. 413, 374 A.2d 1000 (1977)), it is at least clear that laches cannot be imputed by the mere passage of time. At the very minimum there must be some showing that Petitioner was harmed by the delay. As will be seen in the ensuing discussion, Petitioner fails to allege that the delay hampered her defense in this action.

To prevail in her assertion that her constitutional rights have been violated, petitioner has the burden of establishing that some harm or prejudice to her interests has been caused by the delay. *State Dental Council and Examining Board v. Pollock,* 457 Pa. 264, 318 A.2d 910 (1974); *State Board of Funeral Directors v. Cieslak,* 24 Pa. Commonwealth Ct. 315, 355 A. 2d 590 (1976). Petitioner informs us that during the two year period she secured other employment, she was promoted to a supervisory position, and she has invested in an academic program of instruction in nursing. She contends that a suspension of her license to practice nursing, in light of these factors, would seriously prejudice her. We cannot agree that the Board's two year delay in issuing its citation amounts to a violation of Petitioner's constitutional right to due process especially when she does not claim that the delay has affected her ability to defend against the charges. *State Dental Council and Examining Board v. Pollock, supra.* Nor does she contend that in reliance on the delay she has altered her professional career.[2] Given Petitioner's admittedly serious violations of The Professional Nursing Law, her assertion that she has repented and will do no further

---

[2] In fact, she had placed her application for a nursing position at Kane Hospital within days of her termination at Children's Hospital.

wrong, does not justify a reversal of the Board's discretionary action here.

Petitioner also suggests in this regard that the suspension of her license at this time will serve no purpose since her work subsequent to leaving Children's Hospital has been so satisfactory as to make the past conduct no fair basis of prediction that she will be dangerous to patients. The fallacy of this argument, however, is that the public interest served by a license suspension or revocation is not limited to the protection of patients. Equally important to the public interest is the necessity for regulation and discipline of the profession to prevent such unauthorized medical practices in the future.

Petitioner also cites Section 11 of The Professional Nursing Law, 63 P.S. §221, as authority for the proposition that the Board's reissuance of her license to practice nursing on October 31, 1976, foreclosed it from subsequently acting on alleged violations which occurred prior to that date. As the law presently exists, the purpose of renewing an applicant's license, upon submission to the Board of a completed application form and a required fee of $4.00, is merely to raise revenues and to keep a current listing of those authorized to practice nursing in this Commonwealth. It is not, as Petitioner suggests, a legislatively imposed statute of limitations requiring the Board to make an affirmative biennial determination of the qualifications of each nurse.[3] Since this license renewal procedure is ministerial in nature, the Board was not barred from acting as it did.

The second substantive argument propounded by Petitioner concerns the absence of certain Board mem-

---

[3] The Board, in addressing this issue, also recognized the serious constitutional problems that could arise if a license were suspended or revoked without first holding a formal hearing.

bers at the hearing held on April 20, 1977. Specifically, we are asked to determine whether the language of Section 15 of The Professional Nursing Law, 63 P.S. §225, requires at least a quorum of the members of the Board to be present throughout the hearing.[4] While it is uncontroverted that a quorum was present when the hearing convened, several members were required to depart later, thereby leaving less than a quorum present to receive the remaining testimony.[5] We note, parenthetically, that we are not faced with a question of whether the absence of those Board members violated Petitioner's right to due process, since it is well settled that due process is satisfied if the hearing is held before one member of an administrative body, provided that the other members review the testimony before an adjudication is rendered. *Foley Brothers, Inc. v. Commonwealth,* 400 Pa. 584, 163 A.2d 80 (1960); *Fleming v. State Civil Service Commission,* 13 Pa. Commonwealth Ct. 421, 319 A.2d 185 (1974); *Siegel v. Civil Service Commission,* 9 Pa. Commonwealth Ct. 256, 305 A.2d 736 (1973). We are,

---

[4] The Board is created by Section 418 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §128, and a "quorum" is defined therein as follows:

Three members of the board shall constitute a quorum, and the board shall select, from among its members, a chairman, and shall elect a secretary who need not be a member of the board.

[5] What appears to be particularly vexing to Petitioner is that it was her testimony that remained to be heard when the Board recessed and thereafter convened with several members absent. When reference is made to the record, however, it is revealed that Petitioner was informed that those members who were unable to remain would review the transcript of her testimony before rendering their final decision. While we do not condone the behavior of these members in departing as they did, we do note that the Board was not faced with resolving questions of credibility since Petitioner had admitted all of the allegations that she had been charged with.

therefore, faced merely with the construction of the terms of Section 15.

Section 15 provides, *inter alia*:

All suspensions and revocations shall be made only in accordance with the regulations of the Board and only by majority vote of the members of the Board after a full and fair hearing before the Board. All actions of the Board shall be taken subject to the right of notice, hearing and adjudication, and the right of appeal therefrom. . . .

Petitioner argues that the phrase "after a full and fair hearing before the Board" imposes a requirement that all Board members be physically present. This argument is strikingly similar to that presented in *Fleming v. State Civil Service Commission, supra.* In *Fleming,* the petitioner contended that the Commission did not act as a "body" as required by Section 203(2) of the Civil Service Act.[6] Section 203(2) provides in relevant part that "[i]t shall be the duty of members of the commission *as a body*" (emphasis added) to hold public hearings in cases involving, among other things, suspension and removal. We held that this language did not require all members of the Commission to be present at hearings in order to constitute a "body" of the Commission, and reasoned that it merely dictated that the Commission's decisions and actions must be adopted by the full Commission. *Fleming* clearly controls the instant case; in fact, it is arguable that the phrase "as a body" is more restrictive than the phrase "before the Board." We determine, therefore, that Section 15 does not mandate the physical presence of all Board members at a license suspension or revocation hearing.

---

[6] Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §741.203 (2).

Accordingly, we affirm.

ORDER

AND Now, this 12th day of March, 1979, the order of the State Board of Nurse Examiners, dated August 16, 1977, suspending the license of Christiane Tasche Ullo for a period of one (1) year, is hereby affirmed.