Harold Weinberg, Petitioner *v.* Commonwealth of Pennsylvania, State Board of Examiners of Public Accountants, Respondent.

Argued May 9, 1983, before Judges ROGERS, BLATT and DOYLE, sitting as a panel of three.

*Thomas W. Scott,* with him *Smith B. Gephart, Killian & Gephart,* for petitioner.

*Ky Van Nguyen,* Assistant Counsel, with him *Mary S. Wyatte,* Assistant Counsel, *Edward D. Frank, II,* Chief Counsel of Professional and Occupational Affairs, and *David F. Phifer,* Chief Counsel, for respondent.

OPINION BY JUDGE DOYLE, August 8, 1983:

This is an appeal by Harold Weinberg from an order of the State Board of Examiners of Public Ac-

countants which suspended his certificate and permit to practice public accounting for one year.

In 1974, Weinberg, while engaged in the practice of public accounting with the firm of Winderman, Stein, and Weinberg, prepared a 1973 corporate income tax return for Southside AMC-Jeep, Inc. (Southside), a client. Weinberg learned that Southside's 1973 return would be subject to a federal Internal Revenue Service (IRS) audit and met with IRS Agent Joseph V. Maher. Maher informed Weinberg that he would accept a bribe to perform a no-change audit. Weinberg conveyed the offer to the owners of Southside and indicated that it might be cheaper to comply with the bribe than to risk the additional tax liability possible upon the disallowance of some of Southside's deductions. The owners of Southside provided Weinberg with an envelope containing $1,500 for the bribe. Weinberg removed $500 for his own use and left $1,000 for Maher.

In early 1975, Weinberg voluntarily contacted the IRS and confessed all that had taken place. His cooperation was solicited in an IRS investigation of dishonest agents and others suspected of criminal activity. He cooperated and submitted to a "body wire" to tape record conversations and his cooperation extended over a period of five or six months. As a result of Weinberg's cooperation, Maher and another agent pleaded guilty to federal charges and served time in federal prison. Weinberg's cooperation also led to the prosecution and conviction of his business partner, Stanley Stein, in 1976.

Since his cooperation with federal authorities in 1975, Weinberg has established a sole proprietorship and has built a successful accounting practice.

On September 16, 1981, the State Board of Examiners of Public Accountants (Board) issued a Cita-

tion and Notice of Hearing to Weinberg, charging him with a violation of the C.P.A. Law[1] in connection with his arrangement of the bribe to Maher in 1974. In his answer to the citation, Weinberg admitted his guilt but raised the defense of laches, averring that he would be prejudiced in his defense and in raising evidence in mitigation because of the seven year lapse between the occurrence of the events and the action by the Board.

A hearing was held on December 8, 1981 and Weinberg's testimony in the trial of his partner, Stein, constituted the Commonwealth's case in chief. Testimony presented at the hearing also indicated that the IRS agent with whom Weinberg cooperated was no longer able to recall details of the 1974 incident and Weinberg's cooperation or to provide access to the IRS files involved. On March 22, 1982, the Board, by Ad-

---

[1] Act of May 26, 1947, P.L. 318, *as amended,* 63 P.S. §§9.1-9.16b. Weinberg was charged with violations of 63 P.S. §§9.9a(2), (4) and (10). 63 P.S. §9.9a provides, in pertinent part:

> In accordance with the procedure referred to in section 9 of this act, the board . . . may revoke or suspend any certificate of [a] certified public accountant . . . for any one or any combination of the following causes:

> . . . .

> (2) Dishonesty, fraud or gross negligence in the practice of public accounting.

> . . . .

> (4) Violation of a rule of professional conduct promulgated by the board under the authority granted by this act.

> . . . .

> (10) Conduct discreditable to the public accounting profession.

Weinberg was charged with violation of rules promulgated under the C.P.A. Law, found at 49 Pa. Code §§11.22 and 11.27(b).

judication and Order, suspended Weinberg's certificate and permit for one year, effective April 21, 1982. This appeal followed.

This Court has recognized that laches may be asserted as a defense in administrative disciplinary actions. *Harrington v. Department of State,* 58 Pa. Commonwealth Ct. 137, 427 A.2d 719 (1981); *Ullo v. State Board of Nurse Examiners,* 41 Pa. Commonwealth Ct. 204, 398 A.2d 764 (1979); *see also Tighe v. State Board of Nurse Examiners,* 40 Pa. Commonwealth Ct. 367, 397 A.2d 1261 (1979). Laches "bans relief when 'the complaining party is guilty of want of due diligence.' " *Leedom v. Thomas,* 473 Pa. 193, 200, 373 A.2d 1329, 1332 (1977) (quoting *Wilson v. King of Prussia Enterprises, Inc.,* 422 Pa. 128, 133, 221 A.2d 123, 126 (1966)).

In the case at bar, the Board urges that it is not guilty of laches because it acted with due diligence by disciplining Weinberg as soon as it learned of his wrongdoing. The Board alleges that it was unaware of Weinberg's violations of the C.P.A. Law until it read his testimony in the 1976 Stein trial sometime during 1980. The Board urges that we must look to when the Board actually becomes informed of a professional's misconduct to determine whether the doctrine of laches should apply. There is nothing in our case law to support the Board's position.[2] While we

---

[2] Our case law seems implicitly to the contrary. In *Fumo v. Insurance Department,* 58 Pa. Commonwealth Ct. 392, 427 A.2d 1259 (1981), we examined a two and one-half to three year period between Fumo's criminal conviction and the Department's discovery of it. Although we found no prejudice, we characterized the delay as "seemingly dilatory conduct." 58 Pa. Commonwealth Ct. at 398, 427 A.2d at 1263. Similarly, in *Harrington,* 58 Pa. Commonwealth Ct. 137, 427 A.2d 719 (1981) the delay we examined was between a 1975 conviction for bribery and disciplinary action by the Real

recognize that the Board is not prescient in its ability to discover professional misconduct, we believe that where, as here, the evidence of wrongdoing becomes a matter of public knowledge, the Board must be diligent to keep abreast of such matters and act promptly.[3] In its brief to this Court, the Board characterizes itself as "the watchdog of the accounting profession." Implicitly this admits an affirmative duty to at least seek public information regarding unprofessional conduct by those subject to its discipline. We find no excuse for the Board's delay until mid-1980 to discover that C.P.A. Stein had been prosecuted in 1976, and that Weinberg had testified at Stein's public trial.

We do not find the Board's dilatoriness to constitute a grossly unreasonable delay, such that Weinberg's burden to show that he was prejudiced by the

---

Estate Commission instituted in 1979. While again we found no prejudice, we cautioned that our affirmance was "not to be read as condoning what appears to be an inordinate delay in instituting revocation proceedings. . . ." *Id.* at 141, n.3, 427 A.2d at 721, n.3. In neither case did we examine when the disciplinary body received actual notice of the wrongdoing.

[3] We noted in *Fumo v. Insurance Department,* 58 Pa. Commonwealth Ct. 392, 427 A.2d 1259 (1981) that

> [t]he Department asserted that the delay was attributable to the inability of its limited staff to maintain an ongoing search of the relevant criminal court dockets to determine whether licensed agents have been convicted of crimes necessitating discipline. This situation has subsequently been alleviated through promulgation of a regulation requiring insurance agents and brokers to report actionable criminal convictions to the Department within 10 business days. 31 Pa. Code §33.18(b).

*Id.* at 398-99, n.10, 427 A.2d at 1263, n.10. In the case at bar, Weinberg faults the Board for its failure to promulgate such a regulation. We, however, have no authority to insist that the Board institute a reporting requirement.

delay was lessened. *Gabster v. Mesaros,* 422 Pa. 116, 220 A.2d 639 (1966).[4] We believe, however, that the record reflects that Weinberg is prejudiced by the delay and the Board's conclusion that Weinberg had failed to show prejudice was an error of law.[5] Throughout his testimony before the Board, Weinberg indicated that his recollection of detail concerning the circumstances of the bribe and his subsequent cooperation with authorities was understandably dimmed by time. More importantly, the record shows that Weinberg was unable to adequately present evidence in mitigation because of the lapse of time. Testimony indicated that Weinberg could gather no support from the IRS agents with whom he had cooperated because, since the prosecution more than five years prior, they had moved to other positions in other regions in the nation and no longer had good memory of the relevant events, nor did they have access to or even know the location of the relevant IRS files. The Board's finding of fact no. 33 reflects this testimony.[6] We believe the record shows that Weinberg was substantially prejudiced in the preparation of his defense because of the Board's delay.

In addition, the record shows that, following his public testimony in the Stein trial, Weinberg had reason to rely on the Board's inaction as indicative of an intent not to take disciplinary action against

---

[4] In *Gabster,* the delay involved was more than thirty years.

[5] Our review in appeals of actions by the Board is controlled by Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704 and is limited to a determination of whether constitutional rights were violated, an error of law was committed or the findings of fact are unsupported by substantial evidence. *Id.*

[6] The Board found that "[t]he IRS agents with whom the Respondent cooperated did not have any vivid recollection of the entire transaction, or the extent of the Respondent's cooperation when contacted prior to the hearing."

him[7] and established a solo practice disassociated with the impropriety of the 1974 violations. While the mere assertion that he has repented and will do no further wrong does not justify reversal of the Board, *see Ullo,* the record here demonstrates that although Weinberg committed clear and serious violations of law and of the standards of his profession, he just as clearly repented of these violations, voluntarily came forward to make restitution for them, actively assisted in the prosecution of such violations by others, and has since engaged in no questionable conduct related to his profession for more than seven years. Contrary to the Boards position that public policy requires disciplinary actions against Weinberg to prevent future violations such as he committed, we believe that public policy is better served to encourage other wrongdoers to come forward and confess and to recognize that Weinberg has altered the course of his professional career during the Board's delay.

We emphasize that Weinberg's conduct in the 1974 handling of the Southside AMC-Jeep tax audit was abhorrent and in gross disregard of society's standards of honesty as well as those of the accounting profession. Our opinion here is not to be read to condone such conduct, nor to excuse it merely because the wrongdoer later succumbs to conscience and confesses. Here, Weinberg did much more than simply admit his wrongdoing. As noted above, because of the Board's delay, Weinberg was prejudiced in the preparation of

---

[7] Weinberg testified that the IRS agents with whom he cooperated indicated that they were grateful for his cooperation and would help him in any related matter which might come up. Weinberg was not prosecuted nor penalized by the IRS for arranging the bribe of Maher. We think he had reason to believe that the Board had also not acted against him because of his extensive cooperation with the authorities.

his defense. He was able also, during that time, to demonstrate his renewed commitment to the high standards of the profession. In this case the Board cannot now revive old violations to suspend Weinberg's practice of accounting.

Accordingly, we reverse.

## ORDER

Now, August 8, 1983, the order of the State Board of Examiners of Public Accountants in the above referenced matter, dated March 22, 1982 is hereby reversed.

---

DISSENTING OPINION BY JUDGE BLATT:

I must respectfully dissent.

The majority holds that Weinberg was prejudiced by the delay here concerned because it impaired the presentation of his defense in that witnesses have disappeared and memories have faded. It seems to me, however, that any testimony from such witnesses would still be unavailing for the record clearly reflects that Weinberg's own testimony admits that he accepted the bribe in question. The only evidence which these witnesses could give that would be supportive of Weinberg would be to the effect that he turned himself in to the IRS, and that he fully cooperated in further investigations and proceedings, and such testimony would merely be cumulative.[1]

Although I, too, would admonish the Board for its inordinate delay in handling this matter, I believe that, without the requisite showing of prejudice, the defense of laches must fall. *Jackson v. State Real*

---

[1] The rather lenient sanction imposed by the Board is reflective of its understanding of the mitigating factors in Weinberg's favor. The Board had the authority to revoke his certificate.

*Estate Commission,* 72 Pa. Commonwealth Ct. 539, 456 A.2d 1169 (1983).

I would affirm the Board.