501 A.2d 239

**Harold WEINBERG, Appellee,**

v.

**COMMONWEALTH of Pennsylvania, STATE BOARD OF EXAMINERS OF PUBLIC ACCOUNTANTS, Appellant.**

Supreme Court of Pennsylvania.

Argued May 16, 1985.

Decided Nov. 27, 1985.

Ky Van Nguyen, Bureau of Professional & Occupational Affairs, Joyce McKeever, Pittsburgh, David F. Phifer, Dept. of State, Harrisburg, for appellant.

Kimber L. Latsha, Smith B. Gephart, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, McDERMOTT, HUTCH-INSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The sole issue in this appeal is whether appellant, the State Board of Examiners of Public Accountants, is barred by the equitable doctrine of estoppel by laches from instituting disciplinary proceedings against appellee Harold Weinberg for professional misconduct occurring in 1974. We hold that, under the circumstances of this case, laches does not operate to bar such disciplinary proceedings.

Appellee is a public accountant certified by the State Board of Examiners of Public Accountants (the Board) pursuant to the C.P.A. Law, Act of May 26, 1947, P.L. 318, §§ 1–16.2, as amended, 63 P.S. §§ 9.1–9.16(b) (Purdon's 1968). In 1974, appellee handled the account of Southside AMC–Jeep, Inc. (Southside) as a partner in the accounting firm of Winderman, Stein and Weinberg.

In the spring of 1974, appellee met with an agent of the Internal Revenue Service (IRS) to discuss an audit of Southside's 1973 corporate income tax return which appellee had prepared. The agent indicated that Southside owed additional tax liability for 1973 but made an offer to accept a bribe of $1,500 in return for a "no-change" audit. In July, 1974, appellee related this offer to the owners of Southside and advised them that, in his opinion, it would be cheaper to pay the bribe than to risk the additional tax liability. Appellee did not conduct an independent review of the 1973 tax return or of the IRS audit to determine the exact amount of any additional tax liability.

The owners of Southside gave appellee an envelope containing $1,500. Appellee removed $500 from the envelope and appropriated this money for his personal use. On August 22, 1974, appellee delivered the remaining $1,000 to the IRS agent who then recommended a no-change audit as promised.

In early 1975, appellee, through an attorney, voluntarily contacted the IRS and confessed his misdeeds of the previous year. At the request of the IRS, he agreed to cooperate in the investigation and prosecution of the errant IRS agent and others. His cooperation included wearing a "body wire" to tape record several conversations. As a result of appellee's cooperation, two IRS agents pleaded guilty to criminal charges in federal district court. Appellee also testified in federal court in 1976, under a grant of immunity, against his former business partner, Stanley Stein, who was convicted of federal charges. For obvious reasons, the partnership had dissolved and appellee began a sole proprietorship in 1975.

In 1980, the Board brought formal disciplinary action against Stanley Stein based upon his 1976 federal conviction. In prosecuting this disciplinary action, the Board reviewed appellee's testimony from the 1976 federal jury trial and learned, for the first time, of appellee's participation in the 1974 bribery involving Southside. On September 16, 1981, the Board issued a citation and notice of hearing to appellee, charging him with violations of section

9.9a of the C.P.A. Law [1] and of the Board's regulations.[2] Appellee's answer essentially admitted the factual allegations of the citation and admitted his participation in the 1974 bribery of the IRS agent. Appellee's answer additionally asserted the affirmative defense of laches, stating that he "will be severely prejudiced in his defense and in raising vital mitigating circumstances, because of the passage of over seven (7) years since the occurrence of the events set forth in the citation." Appellee also requested the Board to consider the "vital mitigating factors" in determining the "ultimate discipline to be imposed," including that "his prior single incident of professional misconduct does not adversely reflect on his current fitness to practice ... accounting" and his "staunch cooperation with the prosecuting authorities...."

At the hearing held on December 8, 1981, appellee's testimony at the 1976 Stein trial constituted the Common-

---

**1.** This section provides, in relevant portion:

[T]he board ... may revoke or suspend any certificate of certified public accountant ... or may revoke or suspend or refuse to renew any license issued under this act ... for any one of the following causes:

(2) Dishonesty, fraud or gross negligence in the practice of public accounting.

....

(4) Violation of a rule of professional conduct promulgated by the board under the authority granted by this act.

....

(10) Conduct discreditable to the public accounting profession.

63 P.S. § 9.9a(2), (4) and (10).

**2.** These regulations, set forth at 49 Pa.Code Chapter 11 provide:

**§ 11.22. Integrity and objectivity.**

A licensee shall not in the performance of professional services knowingly misrepresent facts nor subordinate his judgment to others; in tax practice, however, a licensee may resolve doubt in favor of his client as long as there is reasonable support for his position.

*    *    *    *    *    *

**§ 11.27. Auditing standards and other technical standards.**

*    *    *    *    *    *

(b) *Other technical standards.* A licensee shall comply with other technical standards promulgated by bodies of the American Institute of Certified Public Accountants or other recognized authorities designated to establish such standards, and departures therefrom shall be justified by the licensee who does not follow them.

wealth's case in chief. Appellee testified at this hearing and admitted that he had delivered the bribe money to the IRS agent on behalf of Southside and had kept $500 of the money for himself. He also acknowledged that his testimony in the 1976 trial was truthful and accurate. In his defense, however, appellee testified as to his voluntary cooperation in the IRS investigation. He was not able to recall all of the details of that cooperation, nor were the IRS agents involved in the investigation able to recall details of appellee's participation or locate the IRS files involved.

On March 22, 1982, the Board adjudicated appellee guilty of violating the C.P.A. Law and the rules of professional conduct promulgated by the Board, and ordered that appellee's certificate and permit to practice accounting be suspended for one year. The Board rejected appellee's defense of laches, holding that there was not undue delay in initiating the disciplinary proceeding and that appellee was not prejudiced in his defense by the delay because, despite the lack of complete recall on the part of appellee and the IRS agents, the Board fully accepted appellee's assertions as to his voluntary cooperation in the IRS investigation. The Board took into account the lapse of time since appellee's criminal conduct, his subsequent clear record, and his voluntary cooperation in the IRS investigation in arriving at its "rather lenient sanction" of a one year suspension.

Appellee appealed the Board's adjudication to the Commonwealth Court and petitioned for a stay, which was granted. A Commonwealth Court panel reversed the Board. 76 Pa.Cmwlth. 216, 463 A.2d 1210 (1983) (per Doyle, J., joined by Rogers, J.; Blatt, J. dissenting). The Commonwealth Court held that laches barred the Board from instituting disciplinary proceedings because it had not acted with due diligence and because appellee had been prejudiced by the delay. This Court granted the Board's petition for allowance of appeal on March 28, 1984 and we now reverse.

The parameters of the equitable doctrine of laches are well defined. As a unanimous Court recently reiterated in

*Class of Two Hundred Administrative Faculty Members v. Scanlon,* 502 Pa. 275, 279, 466 A.2d 103 (1983):

"The application of the equitable doctrine of laches does not depend upon the fact that a definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice." *Wilson v. King of Prussia Ent., Inc.,* 422 Pa. 128, 133, 221 A.2d 123, 126 (1966); *accord, In Re Estate of Marushak,* 488 Pa. 607, 413 A.2d 649 (1980); *Leedom v. Thomas,* 473 Pa. 193, 373 A.2d 1329 (1977); *Holiday Lounge, Inc. v. Shaler Ent., Inc.,* 441 Pa. 201, 272 A.2d 175 (1971); *Siegel v. Engstrom,* 427 Pa. 381, 235 A.2d 365 (1967); *Truver v. Kennedy,* 425 Pa. 294, 229 A.2d 468 (1967). The prejudice required is established where, for example, witnesses die or become unavailable, records are lost or destroyed, and changes in position occur due to the anticipation that a party will not pursue a particular claim. *Kay v. Kay,* 460 Pa. 680, 685, 334 A.2d 585, 587 (1975); *see also Alker v. Philadelphia National Bank,* 372 Pa. 327, 93 A.2d 699 (1953).

Thus, it is clear that the application of the defense of laches requires not only an unjustified delay, but also that the opposing party's position or rights be prejudiced as a result of that delay. *Leedom v. Thomas, supra. See also* 2 J. Pomeroy, Equity Jurisprudence § 419d, at 177 (5th ed. 1941). Moreover, "[t]he question of laches is factual and is determined by examining the circumstances of each case." *Leedom v. Thomas, supra,* 473 Pa. at 200–201, 373 A.2d at 1332, and cases cited therein.

Furthermore, the defense of laches is an affirmative defense and the burden of proving laches is, therefore, on the defendant/respondent. *See, e.g., Jackson v. State Real Estate Commission,* 72 Pa.Cmwlth. 539, 456 A.2d 1169 (1983); *Harrington v. Commonwealth Department of State,* 58 Pa.Cmwlth. 137, 427 A.2d 719 (1981); *Ullo v.*

*State Board of Nurse Examiners*, 41 Pa.Cmwlth. 204, 398 A.2d 764 (1979).[3]

In applying these principles to the circumstances of this case, it is clear that the Commonwealth Court committed an error of law in holding that appellee has met his burden of proving laches.[4]

■ Initially, we reject the Board's argument that estoppel by laches should not be applied to bar the Commonwealth from initiating disciplinary proceedings by a licensing board. The Board argues that:

This Court has never considered whether laches applies to governmental actions taken by state licensing boards. In other contexts, this Court has held the doctrine of estoppel by laches may not be used against the Common-

---

**3.** Where the time delay is grossly unreasonable, the defendant's burden of proof may be proportionately eased and the "necessity for specifics regarding prejudice or injury becomes less crucial." *Gabster v. Mesaros*, 422 Pa. 116, 220 A.2d 639, 641 (1966) (delay of thirty years in instituting action grossly unreasonable so as to lessen defendant's burden of proving prejudice); *Pennsylvania State Board of Medical Education & Licensure v. Shireson*, 360 Pa. 129, 61 A.2d 343 (1948) (delay of thirty-four years in instituting decertification proceedings against licensed medical practitioner raised presumption of practitioner's innocence of charges). In the instant case, however, the time delay between appellee's misconduct and the Board's initiation of disciplinary proceedings is not grossly unreasonable under the circumstances so as to alter appellee's burden of proof.

**4.** The procedure followed in the suspension or revocation of certificates, registrations or licenses under the C.P.A. Law is that prescribed by the Administrative Agency Law. 63 P.S. § 9.9. The Administrative Agency Law sets forth our standard of review as follows:

**Disposition of appeal**

The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals). *See also Norfolk & Western Railway Co. v. Pennsylvania Public Utility Commission*, 489 Pa. 109, 413 A.2d 1037 (1980).

wealth in actions involving performance of a governmental function. For example, where the Commonwealth is exercising its taxing or police power, laches is not a bar to the Commonwealth's action except in extraordinary circumstances. Since the statutory authority to revoke or suspend a license to practice a profession is the exercise of the government's police power, the statutory purpose and scheme of state licensing laws does not support the expansion of the doctrine of laches to disciplinary proceedings.

Brief for Appellant at 8.

In *Pennsylvania State Board of Medical Education & Licensure v. Shireson*, 360 Pa. 129, 61 A.2d 343 (1948), this Court at least implicitly held that the equitable defense of laches can be asserted against the Commonwealth in a disciplinary action by a licensing board. We have also recognized the availability of the defense against the Commonwealth and other governmental units in numerous cases and in a variety of situations, although the courts will be generally reluctant to apply the doctrine against the government and will require a stronger showing by a defendant who attempts to apply the doctrine against the Commonwealth than by one who would apply it against an individual. *See e.g., Commonwealth Department of Public Welfare v. UEC, Inc.,* 483 Pa. 503, 397 A.2d 779 (1979) (Commonwealth estopped from asserting statute of limitations as defense in assumpsit action); *Commonwealth ex rel. Margiotti v. Union Traction Co. of Philadelphia,* 327 Pa. 497, 194 A. 661 (1937) (Commonwealth estopped by laches from forfeiting the franchise charters of corporations); *Heidorn's Appeal,* 412 Pa. 570, 195 A.2d 349 (1963) (municipality estopped by laches from enforcing zoning restriction); *Class of Two Hundred Administrative Faculty Members v. Scanlon, supra* (Commonwealth estopped by laches from implementing classification system); *Stahl v. First Pennsylvania Banking and Trust Co.,* 411 Pa. 121, 191 A.2d 386 (1963) (Commonwealth estopped by laches from acquiring certain monies held by bank in escheat

proceedings); *Commonwealth ex rel. Storb v. Schroll,* 398 Pa. 354, 157 A.2d 179 (1960) (defense of estoppel by laches may be asserted against Commonwealth in quo warranto proceeding to remove school director from office). While the Board is correct that in some instances, particularly where the taxing power of the state is involved, this Court has held that the defense of laches cannot be asserted against the Commonwealth, these cases merely illustrate the principle that the application of laches involves a factual determination and an ad hoc balancing of conflicting interests in each case. *See Commonwealth Department of Public Welfare v. UEC., Inc., supra* 483 Pa. at 516, n. 6[5], 397 A.2d 779; *see also Clearview Land Development Co., Inc. v. Commonwealth,* 15 Pa.Cmwlth. 303, 327 A.2d 202 (1974). From the foregoing, it is clear that the equitable defense of estoppel by laches is available against the Commonwealth in an administrative disciplinary proceeding by a licensing board, and we expressly approve the consistent body of case law in the Commonwealth Court which so holds.[6]

■ Having decided that the defense of laches is available to appellee in the instant case, we now hold that he has failed to sustain his burden of proving this affirmative

5. There we stated:

Our holding today does not affect the validity of *Commonwealth v. Western Maryland R.R. Co.,* 377 Pa. 312, 105 A.2d 336 (1954) and cases of similar ilk wherein a party seeks to apply the doctrine of estoppel by laches against the governmental unit *to prevent it from exercising some governmental function.* For example, in the *Western Maryland* case, the railroad company sought to prevent the Commonwealth from collecting a particular tax on the grounds that, since the Commonwealth failed to collect such a tax for the twenty years prior, they should be estopped from collecting it then. We held that failure to collect the tax in the past is no bar to present collection. Mistaken indulgence by, or errors of, the Commonwealth in the past do not insulate the taxpayer from tax liability for subsequent years. Our decision today does not alter that result.

6. *See e.g., Harrington v. State Real Estate Commission, supra; Ullo v. State Board of Nurse Examiners, supra; Fumo v. Commonwealth Insurance Department,* 58 Pa.Cmwlth. 392, 427 A.2d 1259 (1981); *Jackson v. State Real Estate Commission,* 72 Pa.Cmwlth. 539, 456 A.2d 1169 (1983).

defense. Appellee has not demonstrated a lack of due diligence on the part of the Board in initiating this disciplinary action. Appellee concedes that the Board did not actually learn of his misconduct until 1980 during the disciplinary proceeding against his former partner and that the Board acted promptly thereafter. However, the Commonwealth Court accepted appellee's argument that the Board should be charged with knowledge of his participation in the 1974 bribery misconduct because of the public nature of his testimony in the 1976 federal prosecution of his former partner.

The Commonwealth Court held that "where, as here, the evidence of wrongdoing becomes a matter of public knowledge, the Board must be diligent to keep abreast of such matters and act promptly.... We find no excuse for the Board's delay until mid-1980 to discover that C.P.A. Stein had been prosecuted in 1976, and that Weinberg had testified at Stein's public trial." 76 Pa.Cmwlth. 216, 463 A.2d at 1212. There is nothing in the record to indicate that the 1976 federal trial was so notorious or the publicity (if any) so pervasive that the Board should have been aware of the trial and of appellee's testimony given during that trial. There are scores of trial courts in this Commonwealth including all of the courts of common pleas and the federal district courts. To charge the Commonwealth as a matter of law with knowledge of every criminal proceeding in every court, as the Commonwealth Court has done, is unwarranted. Due diligence is a factual determination to be decided under the circumstances of the case, and appellee has failed to meet his burden of demonstrating that the Board did not act with due diligence. *Cf. Heidorn's Appeal, supra* (knowledge of open and conspicuous zoning ordinance violation would be imputed to municipality for purposes of determining whether municipality acted with due diligence in attempting to enforce ordinance) *and Commonwealth ex rel. Margiotti v. Union Traction Co. of Philadelphia, supra.* ("After the validity, or apparent validity, of corporate transactions so conducted in public

view has gone unchallenged and has not only been recognized but participated in over the specified period by the General Assembly, by the courts of the Commonwealth and by the Public Service Commission, since its creation, in dealing with these transactions . . . .", knowledge of transactions imputed to Commonwealth for purposes of determining whether Commonwealth acted with due diligence in attempting to invalidate transactions).

Neither has appellee met his burden of demonstrating that he has been prejudiced by the delay in this case. Appellee asserts that he has been prejudiced in three ways: (1) that his recollection and that of the IRS agents with whom he cooperated have diminished with time regarding his cooperation and participation in the investigation; (2) that the IRS files concerning the investigation (and his cooperation) cannot now be located; and (3) that he has gone to great expense and inconvenience in establishing his present sole accounting proprietorship and that the delay in instituting disciplinary proceedings have hurt his chances of pursuing alternative business or career opportunities.

As to his first two assertions, appellee has not been prejudiced. The Board fully accepted appellee's testimony regarding his cooperation in the IRS investigation and considered it a mitigating factor, as is reflected in the rather lenient one year suspension imposed for appellee's admitted serious misconduct. The faded recollections and unavailable IRS files are inconsequential since the Board completely credited appellee's testimony in this regard. As to appellee's third assertion, there is also no prejudice demonstrated. Appellee states that the "lengthy inaction of the Board induced his detrimental reliance" in establishing a sole proprietorship. Brief for Appellee at 22. The short answer to appellee's assertion is that the Board's delay could not so have "induced his detrimental reliance" since he established his sole proprietorship in 1975 before he had even testified against his business partner in federal court. As we stated in *Leedom v. Thomas*, 473 Pa. 193, 201, 373 A.2d 1329, 1333 (1977): "Laches is founded on some change

in the condition or relations of the parties which occurs during the period the complainant unreasonably failed to act. (citations omitted) It cannot be based on a change of position taking place before the complainant could have and reasonably should have brought suit." Appellee's establishment of his sole proprietorship in 1975 was not induced by the Board's "inaction", nor did appellee rely on the Board's "inaction" to his detriment. The Commonwealth Court erred, therefore, in holding that appellee had been prejudiced by the Board's delay in instituting disciplinary proceedings.

We certainly do not condone these delays between judicial findings or admissions of wrongdoing and the initiation of administrative disciplinary proceedings. We note our concern that this problem seems to be arising with increasing frequency. *See, e.g.,* the Commonwealth Court cases cited in text, *supra* at 151, n. 6; *see also Fumo v. State Real Estate Commission,* 85 Pa.Cmwlth. 387, 481 A.2d 1257 (1984), petition for allowance of appeal granted July 10, 1985 (more than three year delay between criminal conviction and initiation of disciplinary proceedings based upon the conviction; however, defense of laches held to have been waived) *and State Board of Nurse Examiners v. Kindle,* 86 Pa.Cmwlth. 468, 485 A.2d 534 (1984), petition for allowance of appeal granted July 10, 1985 (The Commonwealth Court stated: "We hold that a four year delay [between criminal conviction and initiation of disciplinary proceedings] is excessive and prejudicial per se...."). As the Commonwealth Court in the instant case has pointed out, the Insurance Department has promulgated regulations requiring agents and brokers who have been convicted of, or have plead guilty or *nolo contendere* to charges of "the type of criminal conduct which reflects on the honesty and integrity of the agent or broker", to report such fact to the Department within ten days. 31 Pa.Code § 33.19(b). Such reporting requirement should eliminate the problem with delay in instituting Insurance Department disciplinary proceedings. While we cannot order other Commonwealth

agencies and boards to promulgate similar regulations (for to do so would be legislating), we strongly urge the adoption of similar reporting requirements to alleviate the problem we address today.

For the foregoing reasons, we dissolve the stay, reverse the order of the Commonwealth Court and reinstate the order of the State Board of Examiners of Public Accountants suspending appellee's certificate and permit to practice for one year.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the stay is dissolved, the Order of the Commonwealth Court is reversed and the Order of the State Board of Examiners of Public Accountants suspending appellee's certificate and permit to practice for one year is reinstated.

NIX C.J., concurs in the result.

FLAHERTY, J., did not participate in the consideration and decision of this case.

PAPADAKOS, J., filed a dissenting opinion.

PAPADAKOS, Justice dissenting.

While I agree that the equitable doctrine of laches may be asserted against the Commonwealth in an administrative disciplinary proceeding by a licensing board, I dissent from the majority's conclusion that Harold Weinberg (Appellee) failed to meet his burden of proving laches.

Appellee's burden was to demonstrate that the State Board of Examiners of Public Accountants (Board) was guilty of want of due diligence in failing to institute its action to Appellee's prejudice. *Class of Two Hundred Administrative Faculty Members v. Scanlon*, 502 Pa. 275, 466 A.2d 103 (1983).

As we stated in *Scanlon*, the prejudice required is established where, for example, witnesses die or become una-

vailable, records are lost or destroyed, and changes in position occur due to the anticipation that a party will not pursue a particular claim. *Scanlon,* 502 Pa. at 279, 466 A.2d at 103.

Appellee admitted that his unethical conduct occurred in 1974, and that from early 1975 onwards, he confessed his wrongdoing to the IRS and cooperated with them in investigating and prosecuting errant IRS agents and others, including his former accounting partner. In 1976, Appellee publicly testified at his partner's trial about his own misconduct. Following the public conviction of the partner, it took four years for the Board to commence disciplinary proceedings against Appellee's partner, and five years for the Board to issue a citation to Appellee charging him with violations of the C.P.A. Law and Board regulations. I find the unexplained five-year delay in this case to institute an action against Appellee to constitute a lack of due diligence on the part of the Board.

Unlike the majority, I agree with Commonwealth Court that once evidence of wrongdoing becomes a matter of public knowledge, the Board must be diligent to keep abreast of such matters and act promptly. *Weinberg v. Comm. State Bd. of Ex. of P. Acc.,* 76 Pa.Commonwealth Ct. 216, at 220, 463 A.2d 1210, at 1212 (1983). Since the Board is charged with the responsibility of monitoring the ethical and professional conduct of those it licenses, I believe it has an affirmative duty to keep abreast of public information regarding the unprofessional conduct of those subject to its discipline.

Furthermore, the long delay in the Board prosecuting Appellee prejudiced him because, in the intervening years, Appellee had a change in position due to his anticipation of not being prosecuted.

The majority also concludes that since Appellee did not begin his sole proprietorship until after he testified against his partner, he did not change his position during the period the Board unreasonably failed to act and, therefore, he was

not induced to change by the Board's inaction nor did he rely on that inaction to his detriment. I disagree. Appellee did begin to change his position of opening a sole proprietorship after he began cooperating with the federal authorities and before he testified against his former partner, but had a good reason to rely on the Board's inaction as indicative of its intent not to take disciplinary action against him. As Commonwealth Court noted:

> Weinberg testified that the IRS agents with whom he cooperated indicated that they were grateful for his cooperation and would help him in any related matter which might come up. Weinberg was not prosecuted nor penalized by the IRS for arranging the bribe of Maker. We think that he had reason to believe that the Board had also not acted against him because of his extensive cooperation with the authorities.

*Weinberg,* 76 Pa.Commonwealth Ct. 216, at 222, n. 7, 463 A.2d 1210 at 1213, n. 7.

Appellee's detrimental reliance on the Board's inaction to prosecute after he began establishing a new accounting practice in my mind satisfies the requirement that for laches to apply, the change of condition must occur during the period the complainant unreasonably failed to act. *Leedom v. Thomas,* 473 Pa. 193, 373 A.2d 1329 (1977). The misconduct took place in 1974, Appellee voluntarily confessed in 1975, was granted immunity by the federal authorities in the same year, began a new practice in 1975, and testified against his former partner in March of 1976. Appellee's change of conditions (confession, grant of immunity, testifying against his old partner and starting a new practice) are all close enough in time to when the Board had an affirmative duty to investigate Appellee and file its own charges against him, that not having done so for five years should act as a bar on their present attempt to discipline him.

I would affirm the Opinion and Order of Commonwealth Court.