# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Besko Outdoor Media,                         :
                                             :
                         Petitioner          :
                                             :
             v.                              : No. 316 M.D. 2017
                                             : Argued:  April 10, 2018
The Commonwealth of                          :
Pennsylvania, Department of                  :
Transportation,                             :
                                             :
                         Respondent          :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  August 13, 2018


Besko Outdoor Media (Besko) petitions for review of the June 13, 2017 order of the Secretary of Transportation (Secretary), of the Department of Transportation (PennDOT) denying Besko's exceptions and adopting and finalizing the PennDOT hearing officer's proposed report denying Besko's application for an outdoor advertising device (OAD) permit pursuant to the Outdoor Advertising Control Act of 1971 (Act).[1]  We affirm.

Besko filed an application to PennDOT's Engineering District 5 (District) office to erect an OAD along a stretch of road known as State Route (SR)

---

[1] Act of December 15, 1971, P.L. 596, *as amended*, 36 P.S. §§2718.101-2718.115.

48B3,[2] segment 10, offset approximately 2,400 feet. The District denied Besko's application, stating that SR 48B3 is part of Interstate 78 and that the proposed OAD location did not meet the requirements of the Act, nor did it meet the requirements of either a "Cotton" or "Kerr" area exception.[3]

Besko appealed the denial, and a hearing officer held a hearing on March 21, 2016. Gerry Beskovoyne, Besko's president, testified as an expert in the field of outdoor advertising and as a fact witness. Notes of Testimony (N.T.) at 14. Beskovoyne stated that he submitted an application to PennDOT to place an OAD along the Delaware River Joint Toll Bridge Commission's (DRJTBC) right-of-way located within the limits of the City of Easton, also designated as SR 48B3. N.T. at 15-16. Beskovoyne testified that as part of the application process, he looked at the Federal Highway Administration (FHWA) National Highway System (NHS), including the Eisenhower Interstate System, route logging map to determine whether SR 48B3 was designated as a federal aid highway, thus making it a controlled roadway. N.T. at 18. On a map of the NHS route system, designated as Besko Exhibit 3, Beskovoyne identified the location of the proposed OAD and noted that

---

[2] The designation SR 48B3 represents that the road at issue is located in Northampton County, designated by the number 48, has a toll bridge, designated by the letter B, and that the toll bridge is the third toll bridge in Northampton County, designated by the number 3. Reproduced Record (R.R.) at 34a; Notes of Testimony (N.T.) at 94.

[3] Under the Act and its accompanying regulations, OADs are prohibited along the interstate system except "in zoned or unzoned commercial or industrial areas along those portions of the interstate system constructed on right-of-way, and any part of the width of which was acquired on or before July 1, 1956," known as "Cotton" areas. OADs are also prohibited "in areas zoned commercial or industrial along the interstate system and lying within the boundaries of any incorporated municipality as such boundaries existed on September 21, 1959, and devices located in any other area which, as of September 21, 1959, was clearly established by law as industrial or commercial," also known as "Kerr" areas. Section 4(1)(iv)-(v) of the Act, 36 P.S. §§2718.104(1)(iv)-(v); 67 Pa. Code §§445.4(a)(1)-(2).

2

roads in the Eisenhower Interstate System were denoted by parallel blue lines. N.T. at 19-22. Beskovoyne testified that, based on his expertise, SR 48B3 was not a controlled roadway; instead, it was the connection between Interstate 78 in Pennsylvania and Interstate 78 in New Jersey by the right-of-way of the DRJTBC. N.T. at 22. Besko also presented FHWA route logs, designated as Besko Exhibit 4, which stated that Interstate 78 in Pennsylvania was 75.23 miles in length. N.T. at 23-24. Beskovoyne asserted that this showed that Interstate 78 ended at the jurisdiction of the DRJTBC. N.T. at 24. He additionally testified that the Exit 75 sign positioned next to an exit ramp near the start of the segment of road in question not only signified the mileage, but also denoted the beginning of the DRJTBC's jurisdiction. N.T. at 24; Besko Exhibit 5.

Beskovoyne testified that he spoke with representatives of the FHWA on several occasions during his application process. N.T. at 25. He testified that following his first conversation with an FHWA representative, he understood that SR 48B3 was not a federal aid highway. N.T. at 25-26. Beskovoyne stated that he had subsequent conversations with other representatives who informed him that the first representative had been mistaken. N.T. at 27-28. Beskovoyne testified that the FHWA representatives sent him a corrected map (November 5, 2015 Map) that included the DRJTBC right-of-way as part of Interstate 78. N.T. at 29-30; Besko Exhibit 7. He stated, however, that he had relied on the original map (March 25, 2015 Map), which did not depict the DRJTBC right-of-way as being under the authority of the FHWA and PennDOT, as part of Besko's permit application and the related process. N.T. at 30. Beskovoyne also testified that he relied on the PennDOT map of OAD-monitored routes, which designated the DRJTBC right-of-way as an NHS route, but not a federal aid primary route. N.T. at 31-33; Besko Exhibit 8.

3

Beskovoyne stated that based on this map and his expert opinion, federal aid primary Interstate 78 ended 1,200 feet prior to the Morgan Hill Bridge and resumed at the New Jersey border. N.T. at 33-34. Based on this map, he testified that Besko's proposed OAD site was located 2,400 feet off the federal aid primary Interstate 78 on the opposite side of the Morgan Hill Bridge. N.T. at 34.

Bruce Kern, PennDOT's District Property Manager, testified that, as part of his job duties, he supervises the Outdoor Advertising Manager. N.T. at 38. Kern testified that Interstate 78 is a controlled route throughout its entire length in Northampton County and had been since June 1, 1991 (June 1, 1991 Map). N.T. at 40-43; PennDOT Exhibit D-1. He further testified that Besko failed to provide any documentation to meet its burden of proving that the proposed OAD location was within a Cotton or Kerr area exception. N.T. at 45.

During cross-examination of Kern, counsel for Besko presented several official PennDOT maps of the area in question, designated as Besko Exhibits 9 through 16, as well as the Highway Beautification Management System (HBMS) map of the area. Kern agreed that each of these maps was an official, publicly available PennDOT map and admitted that none of the maps indicated that SR 48B3 was a part of Interstate 78 or a controlled route. N.T. at 49-71. On redirect, Kern stated that the only map that he relied upon when evaluating applications was the June 1, 1991 Map. N.T. at 72-73. He testified that he did not know why the HBMS did not indicate that SR 48B3 was part of a federal aid primary route. N.T. at 78-79.

Frank Desendi, PennDOT's Manager of the Geographic Information Division in the Bureau of Planning Research within PennDOT's Office of Planning, testified that he is responsible for PennDOT's cartography and geographic

4

information systems sections and the IT hardware and software that support them. N.T. at 88-89. PennDOT offered him as an expert in geographic information systems and as a fact witness regarding the preparation of PennDOT's official maps. N.T. at 89. Desendi testified that the November 5, 2015 Map differed from the March 25, 2015 Map because an error in the data on the earlier map was identified and mileage data was added to the database to correct the error. N.T. at 92-94. He further explained that the FHWA received its data from PennDOT. N.T. at 90-91. Desendi testified that, as a result, each of the other maps offered into evidence by Besko reflect the same data error and that the June 1, 1991 Map was the only correct map. N.T. at 97-109. He elaborated that the June 1, 1991 Map was produced by hand whereas the current maps are produced from a database. N.T. at 110. Desendi admitted that the FHWA route log tables were updated as of January 27, 2016, and that PennDOT submitted information to the FHWA annually, but that the FHWA route logs did not reflect additional mileage added to Interstate 78. N.T. at 119-24.

Desendi also testified that SR 48B3 was not listed as part of the PennDOT interstate video log because that program was part of a maintenance program with a primary purpose to collect pavement conditions. N.T. 111-14. He stated that there was no video log of SR 48B3 because PennDOT was not responsible for the pavement management of that stretch of road; instead, that was the responsibility of the Delaware River Port Authority. N.T. at 114. Desendi admitted that he did not know why PennDOT had no pavement responsibilities, but retained control of OADs. N.T. at 115-16.

On December 27, 2016, the hearing officer filed his proposed report, affirming the District's denial of Besko's OAD permit application. The hearing officer's findings are summarized as follows. The District relied upon the June 1,

5

1991 Map, which identified controlled highways for purposes of the Act, in issuing its denial. Findings of Fact (F.F.) No. 4. This official map showed that Interstate 78 is an interstate and controlled highway for its entire length in Northampton County, including the segment adjacent to the proposed location of Besko's OAD. F.F. No. 6. Furthermore, an official map of the FHWA, as well as PennDOT's Geographic Information Systems map tool, showed that SR 48B3 is part of Interstate 78. F.F. Nos. 7-8. Moreover, the maps Besko used to support its argument that Interstate 78 is not an interstate are not maps used for purposes of OAD control. F.F. No. 9. Though the DRJTBC had jurisdiction over SR 48B3 for maintenance purposes, its authority had nothing to do with OAD control. F.F. No. 10. Besko failed to provide any information in its application to support a determination that the proposed location of its OAD would fall within a Cotton or Kerr area exception. F.F. No. 12.

The hearing officer determined that Interstate 78 had been part of the interstate system since at least June 1, 1991, and was, therefore, subject to control under the Act and its accompanying regulations. He also determined that Besko's argument that SR 48B3 was not subject to control under the Act and the need for a Cotton or Kerr exception was irrelevant was without merit. The hearing officer concluded that Besko failed to provide any evidence that the proposed location of the OAD fell within a Cotton or Kerr area exception. Accordingly, the hearing officer concluded that the District's denial of Besko's application was proper.

Besko filed exceptions to the proposed report and requested oral argument before the Secretary. On June 13, 2017, the Secretary denied Besko's exceptions, adopting and rendering final the hearing officer's proposed report.

Besko appealed PennDOT's decision by filing a Petition for Review with this Court that also contained an original jurisdiction action for mandamus

relief, declaratory judgment, and monetary damages. PennDOT filed preliminary objections. On October 19, 2017, this Court sustained PennDOT's preliminary objections, concluding that Besko failed to state a mandamus or declaratory judgment claim upon which relief could be granted, and dismissed Besko's original jurisdiction action. *See Besko Outdoor Media v. Department of Transportation* (Pa. Cmwlth., No. 316 M.D. 2017, filed October 19, 2017) (Colins, S.J.).[4]

On appeal,[5] Besko first argues that its constitutional right to due process was violated because PennDOT's administrative process and procedures governing Besko's appeal of its denial of its OAD permit application are insufficient to provide an adequate administrative remedy. Specifically, Besko relies on *Lyness v. State Board of Medicine*, 605 A.2d 1204 (Pa. 1992), to assert that PennDOT commingled its prosecutorial and adjudicative functions in violation of Besko's constitutional rights. We disagree.

The Act and its corresponding regulations govern and provide a process to apply for and receive OAD permits. Section 5 of the Act, 36 P.S. §2718.105 (defining the sizing, lighting, spacing, and zoning requirements for all OADs subject to the Act); Section 7 of the Act, 36 P.S. §2718.107 (requiring an annual permit for all OADs that have been certified by the Secretary as conforming with Section 5(d) of the Act); 67 Pa. Code §445.6(a)-(b) (outlining the applicability of PennDOT OAD permits and the required contents of permit applications). Under PennDOT's regulations governing administrative practice, a permit applicant may request a

---

[4] In its brief, Besko again argues its original jurisdiction claims. Because this Court previously dismissed those arguments, we decline to revisit them here.

[5] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Kasha v. Department of Transportation*, 782 A.2d 15, 17 n.2 (Pa. Cmwlth. 2001).

7

hearing within 30 days of the PennDOT determination. 67 Pa. Code §491.3(a)-(b). A hearing officer presides at the hearing "and rule[s] on questions regarding the admissibility of evidence or other matters relating to the conduct of the hearing." 67 Pa. Code §491.10(c). The hearing officer may permit the parties "to file recommended findings of fact and conclusions of law, together with a brief or memorandum discussing the applicable law and relevant facts of record." 67 Pa. Code §491.10(d). Following the hearing and submission of any post-hearing filings, the hearing officer prepares and files a proposed report. 67 Pa. Code §491.11. Parties then have the right to appeal the decision of the hearing officer to the Secretary by filing exceptions to the proposed report within 30 days. 67 Pa. Code §491.12(a). If a party disagrees with the determination of the Secretary, it is entitled to appeal to this Court by filing a petition for review under our appellate jurisdiction. Section 763 of the Judicial Code, 42 Pa. C.S. §763.

In *Lyness*, the appellant argued that the State Board of Medicine violated his due process rights because it both determined whether a professional licensing prosecution should be initiated and acted as the ultimate factfinder in determining whether a violation occurred. Our Supreme Court held that such commingling of prosecutorial and adjudicative functions is inconsistent with the notion of due process embodied in the Pennsylvania Constitution. *Lyness*, 605 A.2d at 1204. However, the Supreme Court also noted that "it would be both unrealistic and counterproductive to insist that administrative agencies be forbidden from handling both prosecutorial and adjudicatory functions, where such roles are parceled out and divided among distinct departments or boards." *Id.* at 1209. The Supreme Court held that our Constitution requires that walls of division be constructed to eliminate the threat or appearance of bias. *Id.*

8

This Court has previously reviewed PennDOT's administrative review process, as it applies to permits for OADs, and determined that no such impermissible commingling of functions exists. *Adams Outdoor Advertising, Ltd. v. Department of Transportation*, 860 A.2d 600 (Pa. Cmwlth. 2004). In *Adams*, PennDOT revoked the applicant's permit for an OAD and ordered its removal. *Id.* at 602. After the Secretary denied the applicant's exceptions and adopted the proposed report of the hearing officer, the applicant appealed to this Court, asserting that the adjudicatory and prosecutorial functions of the Secretary were impermissibly commingled. *Id.* at 602, 609. This Court determined that, unlike in *Lyness*, PennDOT's hearing officer and the Secretary were not involved in the initial decision to revoke the applicant's permit. *Id.* at 610. Specifically, we noted that neither PennDOT's counsel nor the hearing officer acted in a prosecutorial role that initiated the revocation of the applicant's OAD; instead, they represented PennDOT in response to the applicant's appeal and their roles were separate and insulated. *Id.* Furthermore, in these proceedings, the Secretary, and not the hearing officer, was the ultimate factfinder, whereas the hearing officer's role was to develop the record and propose a report to the Secretary. *Id.* at 611. Finally, the Secretary's review of the hearing officer's report was *de novo* and ensured that the applicant's due process rights were satisfied. *Id.*

Here, Besko appealed the District's decision and received adequate notice of a hearing where it was able to provide evidence and testimony in support of its arguments. Besko was further able to file exceptions to the hearing officer's proposed report, which the Secretary reviewed *de novo*. Besko does not acknowledge our holding in *Adams*, which we conclude is factually

9

indistinguishable and controlling in this appeal. Therefore, Besko's argument is without merit.

Next, Besko argues that the Secretary erred in denying its permit application because the findings that SR 48B3 is part of an interstate or federal aid primary route are not supported by substantial evidence. Besko contends that the proposed OAD location was, in fact, not part of an interstate or federal aid primary route and, therefore, not required to be within a Cotton or Kerr area. Besko maintains that the denial of its OAD permit application on this sole basis was improper. We disagree.

The Act prohibits the erection of signs along controlled highways, including interstates and federal aid primary routes, unless the sign falls within a Cotton or Kerr exception area. Section 4(1) of the Act, 36 P.S. §2718.104(1). OADs controlled under the Act and its corresponding regulations require a permit from PennDOT. Section 7 of the Act, 36 P.S. §2718.107; 67 Pa. Code §445.6(a)(2). The permit applicant bears the burden of proving whether proposed signs are permitted under the Act and whether the signs comply with the standards set forth in the regulations. *See Philadelphia Outdoor Advertising v. Department of Transportation*, 690 A.2d 789, 793 (Pa. Cmwlth. 1997) (holding that where PennDOT "could not determine otherwise from the information provided . . . [PennDOT] was under no obligation to further investigate [an applicant's] entitlement to permits").

Besko contends that, based on the expert testimony provided by Beskovoyne and the maps offered at the hearing, the evidence overwhelmingly demonstrates that SR 48B3 is not a controlled highway for purposes of the Act and so Cotton or Kerr area exceptions were irrelevant. However, it is well established

10

that when performing a substantial evidence analysis, this Court must view the evidence in the light most favorable to the party who prevailed before the factfinder. *Adams*, 860 A.2d at 605 n.8.

Here, PennDOT offered its Exhibit D-1, which showed that Interstate 78 was a controlled highway for its entire length in Northampton County. PennDOT also offered expert testimony that this was the map that it relied upon when evaluating OAD applications. Moreover, PennDOT offered testimony that the maps that Besko produced in support of its argument were all based on the same flawed data set. After careful review, we conclude that there is sufficient evidence in the record to support the Secretary's findings that SR 48B3 was a part of Interstate 78 and a controlled highway for purposes of the Act. Because the proposed site of Besko's OAD was located along a controlled highway, it was incumbent upon Besko to demonstrate that the location fell within a Cotton or Kerr area exception. Besko offered no evidence to this effect. We, therefore, conclude that the Secretary did not err in affirming the denial of Besko's OAD permit application.

Accordingly, we affirm the Secretary's order.

MICHAEL H. WOJCIK, Judge

11

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Besko Outdoor Media,      :
     :
         Petitioner     :
     :
         v.          : No. 316 M.D. 2017
     :
The Commonwealth of      :
Pennsylvania, Department of      :
Transportation,      :
     :
         Respondent : 

## O R D E R

AND NOW, this 13<u>th</u> day of <u>August</u>, 2018, the order of the Secretary of Transportation, of the Department of Transportation, dated June 13, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge