# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph A. Bahret,                          :
                 Petitioner      :
                                    :

             v.                          :    No. 500 M.D. 2015
                                    :    Submitted: March 18, 2016

Pennsylvania State Police,                 :
                 Respondent     :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**           **FILED: May 16, 2016**

Before this Court in our original jurisdiction are the preliminary objections in the nature of demurrers of the Pennsylvania State Police (PSP) to Joseph A. Bahret's (Bahret) petition for review seeking mandamus and preliminary and final injunctive relief. Bahret requests exemption from registering as a lifetime offender under the Sexual Offender Registration and Notification Act (SORNA)[1] because he did not receive timely notice of his duty to register, and his period of registration would have ended before he received notice. Upon review, we overrule the preliminary objections.

## I. Background

According to the averments in his petition for review (Petition), in July 2000, Bahret was charged with incest, 18 Pa. C.S. §4302, indecent assault, 18

---

[1] Sections 9799.10-9799.41 of the Sentencing Code, 42 Pa. C.S. §§9799.10-9799.41, also referred to as Megan's Law IV.

Pa. C.S. §3126(a)(8), and corruption of minors, 18 Pa. C.S. §6301(a). Pet. at ¶2. At the time of his charges, the first version of Megan's Law[2] was in effect. Megan's Law II[3] was in effect at the time of his convictions. Under Megan's Law II, formerly 42 Pa. C.S. §9795.2(a)(1), offenders "shall be required to register … with [PSP] upon release from incarceration, upon parole from a State or county correctional institution or upon the commencement of a sentence of intermediate punishment or probation."

In November 2000, Bahret pled guilty to incest and corruption of minors. Bahret avers that he received no notice of his duty to register as a sex offender under Megan's Law II at the time he entered a guilty plea. In January 2001, the Dauphin County Court of Common Pleas (trial court) sentenced Bahret to 9-23 months incarceration in Dauphin County Prison. Pet. at ¶5. Bahret alleges the trial court did not inform him of his duty to register as a 10-year registrant at the time of his sentencing in accordance with Megan's Law II, formerly 42 Pa. C.S. §9795.3.

Bahret served his sentence and was released on parole on **August 10, 2001**. Bahret avers the Department of Corrections (DOC) did not inform him of his duty to register as part of his parole requirements. Pursuant to Megan's Law II, his 10-year registration period began to run on that date. Significantly, had Bahret registered upon his release, he would have completed his 10-year registration period on **August 10, 2011**.

---

[2] Pennsylvania adopted Megan's Law ("Megan's Law I"), formerly 42 Pa. C.S. §§9791-9799.6, on October 24, 1995; the registration portion of the statute took effect on April 21, 1996.

[3] Act of May 10, 2000, P.L. 74, formerly 42 Pa. C.S. §9795.1(a)(1).

SORNA, commonly known as Megan's Law IV, was enacted on December 20, 2011; it went into effect one year later. SORNA applies to "an individual who … was required to register with [PSP] … prior to December 20, 2012, and did not register." 42 Pa. C.S. §9799.13(3)(ii). Under SORNA, an individual convicted of incest is designated as a Tier III sex offender, and is subject to lifetime registration requirements. 42 Pa. C.S. §9799.13(3).

For the first time, on January 4, 2012, Bahret received notice regarding his duty to register as a sex offender. PSP sent Bahret a letter advising him: "Pennsylvania Megan's Law requires that you register as a Sexual Offender." Pet. at Ex. 2 (Letter). Subsequently, PSP sent letters in 2013 and 2015, again notifying Bahret of his duty to register. He has not registered to date.

In 2015, Bahret filed the Petition seeking mandamus and injunctive relief. Bahret claims exemption from SORNA under the circumstances involving unreasonable delay and resulting prejudice more than a decade post-conviction. He argues the lack of notice as to any duty to register under Megan's Law precludes the Commonwealth from imposing lifetime registration almost 11 years later. He avers imposing a registration requirement now prejudices him, his family and his fundamental right to reputation. Because the law at the time of his sentencing only required a 10-year registration period, which period would have expired before SORNA took effect, he contends SORNA does not apply to him. Bahret seeks a writ prohibiting PSP and other law enforcement agencies in the Commonwealth from placing his name on the registry of Megan's Law offenders. He also seeks to enjoin PSP from applying SORNA registration requirements as to him.

3

In response, PSP filed preliminary objections in the nature of a demurrer averring that Bahret failed to state a claim as a matter of law. Specifically, PSP states five objections: (1) the mandamus claim is time-barred; (2) the mandamus claim is legally insufficient; (3) Bahret fails to state a claim for which relief may be granted because he is subject to SORNA; (4) laches may not be invoked against the Commonwealth; and, (5) noncompliance with the Pa. R.C.P. No. 1531(b) requirement of filing an injunction bond precludes injunctive relief.

The parties briefed the issues; thus, the preliminary objections are ready for disposition.

## II. Discussion

## A. Legal Standards

To state a claim in mandamus, the petitioner must establish "a clear legal right to relief, a corresponding duty in the respondent and the lack of any other adequate and appropriate remedy." Smires v. O'Shell, 126 A.3d 383, 387-88 (Pa. Cmwlth. 2015). Mandamus cannot lie "to compel performance of a discretionary act or to govern the manner of performing [the] required act." Coppolino v. Noonan, 102 A.3d 1254, 1263 (Pa. Cmwlth. 2014), aff'd, 125 A.3d 1196 (Pa. 2015) (quoting Volunteer Firemen's Relief Ass'n of City of Reading v. Minehart, 203 A.2d 476, 479 (Pa. 1964)). Additionally, mandamus is not available to establish legal rights; rather, it is a remedy to enforce rights that are already established. Rummings v. Commonwealth, 814 A.2d 795 (Pa. Cmwlth. 2002).

4

In order to establish a claim for preliminary injunctive relief, a petitioner must aver facts that support the following prerequisites:

(1) necessity to prevent immediate and irreparable harm that cannot be adequately compensated by damages;

(2) greater injury would result from refusing an injunction than from granting it;

(3) an injunction will properly restore the parties to their status as it existed prior to the alleged wrongful conduct;

(4) the right to relief is clear, and that the wrong is manifest, and success on the merits is likely;

(5) the injunction is reasonably suited to abate the offending activity; and,

(6) an injunction will not adversely affect the public interest.

Greater Nanticoke Area Educ. Ass'n v. Greater Nanticoke Area Sch. Dist., 938 A.2d 1177, 1184 (Pa. Cmwlth. 2007).


In reviewing preliminary objections, "we must consider as true all well-pleaded material facts set forth in the petition for review and all reasonable inferences that may be drawn from those facts." Meggett v. Pa. Dep't of Corr., 856 A.2d 277, 279 (Pa. Cmwlth. 2004). "Preliminary objections should be sustained only in cases [in which it is] clear and free from doubt that the facts pleaded by appellant are legally insufficient to establish a right to relief." Werner v. Zazyczny, 681 A.2d 1331, 1335 (Pa. 1996). Moreover, "[a] petitioner is under *no burden* to prove his cause of action at this preliminary stage." Konyk v. Pa. State Police, 133 A.3d 96 (Pa. Cmwlth. 2016) (emphasis in original).

## B. PSP's Preliminary Objections

## 1. Statute of Limitations

First, PSP argues Bahret's claim is precluded by the statute of limitations under 42 Pa. C.S. §5522(b)(1). PSP's argument is predicated on applying a six-month statute of limitations to mandamus claims. In support, PSP cites our decision in Curley v. Smeal, 41 A.3d 916 (Pa. Cmwlth. 2012) (Curley I), aff'd but criticized, 82 A.3d 418 (Pa. 2013) (per curiam) (Curley II).

Recently, this Court expressly overruled our holding in Curley I, and questioned whether the six-month statute of limitations in Section 5522(b)(1) applies to mandamus actions. Morgalo v. Gorniak, __ A.3d __, (Pa. Cmwlth., No. 489 M.D. 2013, filed March 8, 2016) (en banc), Slip Op. at 8. In Morgalo, we recognized our Supreme Court's criticism of holding mandamus claims to a six-month limitations period. See Curley II. We abrogated Curley I in part based on the then-Chief Justice's concurring opinion, questioning that mandamus "would lend itself to a period of limitations analysis; since mandamus action alleges a failure to act, there is no action to trigger a specific limitations period." Curley II, 82 A.3d at 419 (Castille, C.J., concurring op.). Therefore, Curley I offers dubious authority for establishing a six-month limitations period for mandamus claims.

Additionally, and regardless, this Court recently rejected PSP's preliminary objection to a mandamus claim on the same ground in Taylor v. Pennsylvania State Police, 132 A.3d 590 (Pa. Cmwlth. 2016) (en banc). There, the petitioner filed a petition seeking a writ in mandamus and a request for injunctive relief alleging SORNA's lifetime registration requirement constituted an

impermissible *ex post facto*[4] punishment and violated due process.  Taylor claimed he was subject to only a 10-year registration period under Megan's Law II.  PSP objected that Taylor's claim was time-barred because he filed the action more than six months after SORNA became effective.

We overruled PSP's preliminary objection on the ground that Taylor's claim did not sound solely in mandamus.  In so doing, we recognized Taylor's claim, while titled as a mandamus claim, actually sought declaratory and injunctive relief.  We reasoned he was not barred from pursuing a claim based on his mischaracterization of the type of action as one subject to a six-month limitation.

For these same reasons, we overrule PSP's objection here.  Bahret claims a deprivation of due process in receiving late notice of a duty to register, arguing he is not subject to SORNA based on lack of proper notice and laches.  Bahret also asserts grounds for injunctive relief.  Because these claims are not limited to mandamus, they are not time-barred on that basis.

## 2. Mandamus

In the alternative, PSP argues mandamus is not appropriate because Bahret cannot show PSP has a clear legal duty to change the duration of his registration requirement.  PSP explains its only duty is to notify sex offenders of their obligation to register under SORNA.

---

[4] U.S. CONST., art. 1, §10, cl.1; PA. CONST., art. 1, §17.  Pennsylvania courts consistently hold that the registration requirements imposed on convicted sex offenders do not constitute *ex post facto* punishment.  Commonwealth v. Leidig, 956 A.2d 399 (Pa. 2008); Gordon v. Dep't of Corr., 16 A.3d 1173 (Pa. Cmwlth. 2010).

Mandamus is not appropriate to reverse action the Commonwealth has already taken. Chanceford Aviation Props., LLP v. Chanceford Twp. Bd. of Sup'rs., 923 A.2d 1099 (Pa. 2007). Further, to survive preliminary objections, a petitioner must allege a mandatory, ministerial duty that the Commonwealth failed to perform. Coppolino.

From our review of the Petition, Bahret is not seeking to compel PSP to perform a duty. To the contrary, he asks this Court to declare PSP has no duty to notify him of his registration obligations because SORNA's registration requirements do not apply to him. Essentially, Bahret asks us to direct PSP to retract its notice. Accordingly, Bahret's claims do not sound in mandamus.

However, that does not resolve the matter. We do not sustain preliminary objections for failure to state a legal claim simply because the averments set forth a cause of action that is improperly titled. See Taylor. Here, Bahret alleges claims sounding in declaratory judgment and equity. In addition to his claim for injunctive relief, Bahret seeks a declaration that he has no duty to register under SORNA and is not subject to its registration requirements.

Accordingly, insofar as PSP alleges Bahret failed to state a claim for which relief may be granted, its objection is overruled.

### 3. Applicability of SORNA

Primarily, PSP demurs to Bahret's Petition because SORNA applies to those convicted of listed offenses who had a duty to register, but did not do so.

8

In support of applying SORNA here, PSP cites our unreported decision in Dunyan v. Pennsylvania State Police (Pa. Cmwlth., No. 75 M.D. 2015, filed December 17, 2014). There, the offender had notice of his duty to register for life as a convicted sex offender. He received notice from PSP in December 2012 of his Tier III offender classification under SORNA, subject to its additional registration requirements. Dunyan did not question his requirement to register; he was already registered. Rather, Dunyan challenged the frequency of registration based on *ex post facto* principles. We reasoned SORNA applied to offenders like Dunyan who had not completed their registration requirements when the new law took effect.

Because the facts are different, Dunyan is not persuasive here. In this case, Bahret alleges he never received notice of the registration requirements. As a result, he did not know to register. In fact, he did not register during the more than 10 years between his release in August 2001, when he was supposed to register, and August 2011, when that registration period would have expired. Unlike Dunyan, he does not merely challenge the burden of the registration requirements; he denies their application to him given the delay between notice and his conviction.

As pled, this case is more analogous to Commonwealth v. Richardson, 784 A.2d 126 (Pa. Super. 2001). There, the offender previously served the full sentence for his sex offense at the time the authority attempted to impose a registration requirement on him under Megan's Law I. The correctional authority asserted the offender should be subject to registration because he was under Commonwealth supervision on another, unrelated offense. Our Superior Court disagreed, holding the registration requirement did not apply.

9

While recognizing the import of the legislative intent to protect public safety through the registration requirements, our sister court explained the law did not apply to offenders who maxed out their Megan's Law-related offenses before the effective date. Were the statute construed otherwise, then any offender who fully completed his sentence on a sex offense 20 years before enactment of the first Megan's Law may be subjected to registration if later convicted of an unrelated offense. Courts presume the General Assembly did not intend such an absurd result.

In determining whether new versions of Megan's Law apply to past sex offenders, our courts consider the reason for the legislation and the harm to be remedied. Megan's Law restrictions are remedial in nature, designed to promote public safety, and are not punitive. Commonwealth v. Leidig, 956 A.2d 399 (Pa. 2008). New legislation may be imposed on sex offenders as a collateral effect "so long as [the sex offender] remains in the custody of correctional authorities to discharge any part of his sentence for the sex offense." Commonwealth v. Benner, 853 A.2d 1068, 1072 (Pa. Super. 2004); see also Commonwealth v. McDonough, 96 A.3d 1067, 1071 (Pa. Super. 2014), appeal denied, 108 A.3d 34 (Pa. 2015) (explaining principles behind registration requirements for sex offenders under Megan's Law "apply to those subject to SORNA."). Thus, the supervision status of the sex offender is relevant.

Based on the principles that Megan's Law registration requirements are not penal in nature, and are a collateral consequence of conviction as opposed to a part of the sentence, our courts hold they apply to offenders in all stages of supervision, including incarceration and probation, and as registrants. This

rationale presumes the offenders require oversight; it is unclear that the reasoning for applying SORNA to offenders who remain under Commonwealth supervision holds when the period of supervision has ended.

This case is also distinguishable from the bulk of case law addressing Megan's Law registration requirements in that Bahret avers that he was not aware of the registration requirement. <u>See</u>, <u>e.g.</u>, <u>Konyk</u> (objecting to lifetime registration as outside plea agreement, which provided 10-year registration requirement). Here, Bahret argues the government is estopped from enforcing SORNA against him when: (1) he had no notice of the duty to register; and, (2) had the Commonwealth performed its duty to notify him, his registration period would have elapsed before SORNA's enactment.

Relevantly, here, Bahret served his sentence more than 10 years before SORNA came into effect. As Bahret was no longer serving a sentence, he was no longer subject to custody or supervision. He was not under supervised parole since 2004. Significantly, the collateral consequence of his 2001 sentence, of a 10-year registration period, also would have ended in August 2011, more than a year before SORNA came into effect.

We need not address the merits of whether Bahret is subject to SORNA's registration requirements at the pleading stage. However, we cannot hold that the law will not permit recovery in light of the unique facts alleged here.

Accepting the allegations in the Petition as true, as we must on preliminary objections, Bahret was ignorant of his duty to register until he received PSP's letter almost 11 years post-conviction. No authority informed him of a duty to register upon his release. There is no dispute that had he registered upon release, his registration period would have ended before SORNA's enactment, and more than a year before its effective date. At this early stage, we do not foreclose the possibility that Bahret may establish a right to relief from the lifetime registration requirement under SORNA.

Moreover, as addressed more fully below, certain circumstances may warrant an exemption from the collateral consequences of a conviction on equitable grounds. Consequently, we decline to dismiss Bahret's Petition for failure to state a cognizable claim.

### 4. Laches

PSP also argues laches does not offer a defense against the government's enforcement duties. Bahret's Petition must be dismissed, PSP asserts, because laches is not available when the Commonwealth is acting under its police powers.

The defense of laches "arises when a [party's] position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him." Commonwealth v. Schroll, 157 A.2d 179, 181 (Pa. 1960). To establish the defense of laches, a party must not only show "an unjustified delay, but also that [the] party's position or rights be prejudiced as a result of that delay."

12

Weinberg v. State Bd. of Examiners, 501 A.2d 239, 242 (Pa. 1985). The application of laches involves a factual determination based on the individual circumstances of each case. Id.

The defense of laches may be raised against the Commonwealth in certain limited circumstances. Gingrich v. Dep't of Transp. (DOT), __ A.3d __, (Pa. Cmwlth., No. 748 C.D. 2015, filed March 30, 2016) (en banc) (equitable defense precluded Commonwealth from suspending licensee's operating privilege 10 years after conviction for driving under the influence); Weinberg (administrative licensure proceedings); Schroll.

This Court's recent en banc decision in Gingrich is instructive as to the application of laches against the Commonwealth. There, DOT suspended Gingrich's license when it received notice of a conviction for violating 75 Pa. C.S. §3802 (driving under the influence). Relevant here, DOT received notice of the DUI conviction 10 years after the licensee committed the offense. Gingrich argued DOT should be precluded from suspending her license based on the 10-year delay and the prejudice caused by that delay. The trial court rejected the defense, citing this Court's precedent that delays not attributable to DOT shall not be grounds for setting aside a suspension. However, in light of the circumstances, the trial court urged this Court to reconsider that general rule.

On appeal, we reversed the suspension, reasoning that "extraordinary circumstances" may warrant reconsideration of a suspension that "loses its public protection rationale." Id., slip op. at 11. We explained the public safety concerns

13

may no longer exist 10 years after a conviction, such that, instead of a civil consequence, suspension "simply becomes an additional punitive measure resulting from the conviction." Id. Consequently, it is not accurate to state as a matter of law that laches may not estop the Commonwealth from imposing a collateral consequence of conviction more than 10 years after the conviction when changed circumstances are shown.

Here, Bahret alleged the almost 11 years between sentencing (when the Commonwealth had a duty to notify him of his registration requirement), and PSP's Letter advising him of his duty to register under SORNA was unreasonable. He also averred prejudice stemming from the Commonwealth's inaction because he would have fulfilled his registration term before SORNA's enactment if he received proper notice. Specifically, he alleged that requiring his lifetime registration now "is extremely prejudicial to him, his family, his livelihood and his reputation."[5] Pet. at ¶28.

Determinations as to whether laches applies are fact dependent. Weinberg. In appropriate circumstances, laches may be a defense estopping the Commonwealth from prosecuting collateral consequences of a stale conviction, even in the interest of public safety. Gingrich. Bahret alleges facts that, if proven, may show the unreasonableness of the delay and resultant prejudice. We cannot discount the potential validity of these grounds for invoking laches at this stage. As we are unable to reject this defense as a matter of law, we overrule PSP's preliminary objection as to laches.

---

[5] See PA. CONST. art I, §1 (protecting right to reputation).

14

## 5. Bond

Lastly, PSP contends Bahret's claim for injunctive relief should be dismissed because he did not comply with Pa. R.C.P. No. 1531(b) regarding the requirement of filing an injunction bond. We disagree.

Rule 1531(b) provides in pertinent part:

> a <u>preliminary</u> or special <u>injunction shall be granted only if</u> the plaintiff files a bond in an amount fixed and with security approved by the court … conditioned that if the injunction is dissolved because improperly granted or for failure to hold a hearing, the plaintiff shall pay to any person injured all damages sustained by reason of granting the injunction ….

Pa. R.C.P. No. 1531(b). The bond requirement exists for the specific purpose of protecting a defendant by supplying a fund to pay damages in the event the trial court granted relief erroneously. <u>Goodies Olde Fashion Fudge Co. v. Kuiros</u>, 597 A.2d 141 (Pa. Super. 1991). A bond is a precondition for obtaining injunctive relief. <u>Greco v. Hazleton City Auth.</u>, 721 A.2d 399 (Pa. Cmwlth. 1998). Absent compliance, a defendant has no obligation to comply with the injunction. <u>Id.</u>

An appellate court must invalidate an injunction if the trial court did not order the plaintiff to file a bond. <u>Walter v. Stacy</u>, 837 A.2d 1205 (Pa. Super. 2003). However, there is no provision for dismissing an injunction claim at the pleading stage when a petitioner fails to file a bond.

Bahret was not required to file an injunction bond when he filed suit. The language of the requirement presupposes the granting of an injunction by the trial court, requiring the filing of a bond only *after* the trial court sets the amount of

the bond.  See Pa. R.C.P. No. 1531(b) ("plaintiff files a bond in an amount fixed and with security approved by the Court …").  From our construction of the Rule, the bond requirement is triggered by the entry of an order granting injunctive relief. Moreover, PSP cites no authority for dismissing a petition for a preliminary injunction based on noncompliance with Rule 1531(b).  Thus, we overrule PSP's preliminary objection on this ground.

### III. Conclusion

For the foregoing reasons, PSP's preliminary objections are overruled. Specifically, we hold as follows: (1) PSP's objection alleging Bahret's claims are time-barred is overruled; (2) PSP's demurrer to the complaint on the ground that mandamus will not lie is overruled because Bahret alleges facts that support a claim for declaratory judgment and injunctive relief; (3) PSP's objection alleging Bahret lacks a right to relief because he is required to register under SORNA is overruled; (4) PSP's objection that Bahret cannot sustain a defense of laches against the Commonwealth is overruled; and, (5) PSP's objection alleging Bahret may not maintain an injunction claim because he did not post a bond is overruled.


_____
ROBERT SIMPSON, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph A. Bahret,          :
         Petitioner        :
                         :
       v.               :    No. 500 M.D. 2015
                         :
Pennsylvania State Police,     :
         Respondent    :

## O R D E R

**AND NOW**, this 16th day of May, 2016, the preliminary objections filed by Respondent Pennsylvania State Police are **OVERRULED**. Respondent shall file an answer to the Petition for Writ of Mandamus and Preliminary and Final Injunction within 30 days of the date of this Order.

 

_____
ROBERT SIMPSON, Judge
